No. 26-1442

IN THE

# United States Court of Appeals for the Fourth Circuit

---

LUCINDA LC and JUNE WHEATLEY,
on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants,*

v.

JAY SOM, et al.,
in their official capacities,

*Defendants-Appellees.*

---

**On Appeal from the United States District Court
For the Eastern District of Virginia, Alexandria Division
No. 1:26-cv-252**

---

## RESPONSE BRIEF OF APPELLEES

---

JAY JONES
  *Attorney General*

TRAVIS G. HILL
  *Chief Deputy Attorney General*

GRETCHEN E. NYGAARD
  *Deputy Attorney General*

TILLMAN J. BRECKENRIDGE
  *Solicitor General*

MEGAN C. KEENAN
  *Deputy Solicitor General*

MIKAELA A. PHILLIPS
  *Assistant Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-1252 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

July 15, 2026

*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS

Introduction ................................................................................... 1

Issues Presented ........................................................................... 2

Jurisdictional Statement .............................................................. 3

Statement ...................................................................................... 3

    A.    Congress creates the Housing Choice Voucher
           Program ........................................................................ 3

    B.    When a landlord objects to an inspection of
           property in which she has a reasonable
           expectation of privacy, the Fourth Amendment
           requires an opportunity for review by a neutral
           decisionmaker ............................................................. 6

    C.    Virginia enacts a source-of-funds provision and
           an administrative enforcement mechanism ................. 8

    D.    The Virginia Real Estate Board initiates
           enforcement proceedings against Lucinda for an
           alleged violation of the source-of-funds provision ....... 12

    E.    Lucinda brings a lawsuit in federal court while
           the state enforcement proceedings against it
           remain ongoing ........................................................... 14

Standard of Review ..................................................................... 15

Summary of Argument ................................................................ 16

Argument ..................................................................................... 18

    I.     *Younger v. Harris* requires abstention ................................. 18

     A.    State administrative proceedings conducted to enforce the Virginia Fair Housing Law are quasi-criminal .................................................................22

     B.    The enforcement proceedings are ongoing and sufficiently judicial in nature .......................................26

II.    This Court should alternatively abstain under *Railroad Commission of Texas v. Pullman Co.* .....................30

III.    Lucinda's Fourth Amendment claim is not ripe...................33

IV.    Lucinda's Fourth Amendment claim fails as a matter of law ......................................................................................39

     A.    The district court correctly rejected Lucinda's facial challenge...........................................................39

     B.    As written and enforced, the source-of-funds provision is compatible with a landlord's Fourth Amendment rights .......................................................43

     C.    To the extent the source-of-funds provision is ambiguous about a landlord's ability to obtain review by a neutral decisionmaker before submitting to an inspection, the statute must be interpreted under the canon of constitutional avoidance...................................................................54

     D.    Lucinda has not demonstrated a causal connection between its purported Fourth Amendment concerns and any sanctions that may issue for its refusal to accept Housing Choice Vouchers...................................................................57

Conclusion ...............................................................................60

Certificate of Compliance..........................................................63

Certificate of Service ................................................................64

# TABLE OF AUTHORITIES

**Cases**

*216 East 29th Street Trust v. City of New York,*
No. 24-cv-595 (ER), 2025 WL 315380
(S.D.N.Y. Jan. 28, 2025) ........................................................ 21, 26, 41

*216 East 29th Street Trust v. City of New York,*
No. 25-465-cv, 2025 WL 3264312 (2d Cir. Nov. 24, 2025) ................... 21

*AFA Distributing Co. v. Pearl Brewing Co.,*
470 F.2d 1210 (4th Cir. 1973) ............................................................ 30

*Air Evac EMS, Inc. v. McVey,*
37 F.4th 89 (4th Cir. 2022) ......................................... 19, 20, 22, 24, 26

*American Civil Liberties Union v. Bozardt,*
539 F.2d 340 (4th Cir. 1976) ....................................................... 25, 29

*Benjamin as Trustee of Rebekah C. Benjamin Trust v.*
*Stemple,*
915 F.3d 1066 (6th Cir. 2019) ................................................. 7, 44, 53

*Bumper v. North Carolina,*
391 U.S. 543 (1968) ........................................................................... 53

*Caleb Stowe Associates, Ltd. v. Albemarle County,*
724 F.2d 1079 (4th Cir. 1984) ............................................................ 30

*Camara v. Municipal Court of the City and County of*
*San Francisco,*
387 U.S. 523 (1967) ................................................................ 43, 49, 50

*Centro Tepeyac v. Montgomery County,*
722 F.3d 184 (4th Cir. 2013) .............................................................. 16

*Charter Federal Savings Bank v. Office of Thrift Supervision,*
976 F.2d 203 (4th Cir. 1992) .............................................................. 34

*City of Los Angeles v. Patel,*
  576 U.S. 409 (2015) ...................................................... 6, 7, 43, 50, 51

*Clark v. Martinez,*
  543 U.S. 371 (2005) ...................................................................55

*Commonwealth v. Doe,*
  682 S.E.2d 906 (Va. 2009) ........................................................55

*Cooksey v. Futrell,*
  721 F.3d 226 (4th Cir. 2013) .....................................................15

*Edgar v. Haines,*
  2 F.4th 298 (4th Cir. 2021)........................................................39

*Education Services, Inc. v. Maryland State Board for*
  *Higher Education,*
  710 F.2d 170 (4th Cir. 1983) .....................................................30

*Edward J. DeBartolo Corp. v. Florida Gulf Coast*
  *Building & Construction Trades Council,*
  485 U.S. 568 (1988) .......................................................... 42, 54, 55

*Epic Systems Corp. v. Lewis,*
  584 U.S. 497 (2018) ..................................................................25

*Federal Communications Commission v. Consumers' Research,*
  606 U.S. 656 (2025) ..................................................................56

*Feemster v. BSA Limited Partnership,*
  548 F.3d 1063 (D.C. Cir. 2008).................................................32

*Hooper v. California,*
  155 U.S. 648 (1895) ..................................................................54

*Jonathan R. by Dixon v. Justice,*
  41 F.4th 316 (4th Cir. 2022)................................................15, 20

*Kirby v. Richmond Redevelopment & Housing Authority,*
  No. 3:04-cv-791, 2005 WL 5864797 (E.D. Va. Sept. 28, 2005) ..............5

*Middlesex County Ethics Committee v. Garden State Bar Association,*
457 U.S. 423 (1982) ........................................................................20

*Miller v. Brown,*
462 F.3d 312 (4th Cir. 2006) ...................................... 33, 34, 37

*Montgomery County v. Glenmont Hills Associates Privacy World,*
936 A.2d 325 (Md. 2007) ..............................................................32

*Moody v. NetChoice, LLC,*
603 U.S. 707 (2024) ........................................................................40

*National Association of Diversity Officers in Higher Education v. Trump,*
167 F.4th 86 (4th Cir. 2026)........................................................39

*National Labor Relations Board v. Catholic Bishop of Chicago,*
440 U.S. 490 (1979) ........................................................................55

*Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,*
477 U.S. 619 (1986) ............................................ 19, 25, 26, 27, 28, 29

*Pearson v. Leavitt,*
189 F. App'x 161 (4th Cir. 2006) ..............................................37, 38

*Peyton v. Reynolds Associates,*
955 F.2d 247 (4th Cir. 1992) ......................................................32

*Railroad Commission of Texas v. Pullman Co.,*
312 U.S. 496 (1941) ........................................................ 17, 30, 33, 38

*Rescue Army v. Municipal Court of Los Angeles,*
331 U.S. 549 (1947) ........................................................................33

*Schneckloth v. Bustamonte,*
412 U.S. 218 (1973) ........................................................................53

*See v. City of Seattle,*
387 U.S. 541 (1967) .................................. 6, 7, 43, 49, 50, 53

*Socialist Labor Party v. Gilligan,*
406 U.S. 583 (1972) ................................................. 36

*South Carolina v. United States,*
912 F.3d 720 (4th Cir. 2019) ..................................... 37

*Sprint Communications, Inc. v. Jacobs,*
571 U.S. 69 (2013) ......................................... 20, 22, 24

*Telco Communications, Inc. v. Carbaugh,*
885 F.2d 1225 (4th Cir. 1989) ............................ 27, 29, 36

*Texas v. United States,*
523 U.S. 296 (1998) ................................................. 33

*United States v. Smith,*
395 F.3d 516 (4th Cir. 2005) ..................................... 57

*United States v. Vuitch,*
402 U.S. 62 (1971) ................................................. 55

*VonRosenberg v. Lawrence,*
781 F.3d 731 (4th Cir. 2015) ..................................... 15

*Washington State Grange v. Washington State*
*Republican Party,*
552 U.S. 442 (2008) ........................................... 39, 42

*West Virginia Highlands Conservancy, Inc. v. Babbitt,*
161 F.3d 797 (4th Cir. 1998) ..................................... 37

*Wise v. Circosta,*
978 F.3d 93 (4th Cir. 2020) ....................................... 30

*Younger v. Harris,*
401 U.S. 37 (1971) ....................16, 18, 19, 20, 22, 24, 25, 38

**Statutes**

28 U.S.C. § 1292 .........................................................................3

42 U.S.C. § 1437f ............................................................... 4, 6, 43

Va. Code § 3.2-5102 ...................................................................48

Va. Code § 3.2-5207 ...................................................................48

Va. Code § 3.2-5208 ...................................................................48

Va. Code § 6.2-1309 ...................................................................49

Va. Code § 18.2-340.18 ..............................................................49

Va. Code § 36-96.1 .....................................................................40

Va. Code § 36-96.1:1 ..................................................................10

Va. Code § 36-96.10 ...................................................................11

Va. Code § 36-96.11 ............................................... 11, 23, 24, 29

Va. Code § 36-96.115 .................................................................28

Va. Code § 36-96.12 ............................................... 11, 23, 24, 29

Va. Code § 36-96.14 ......................................... 11, 23, 24, 29, 33

Va. Code § 36-96.16 ....................................................... 11, 23, 33

Va. Code § 36-96.2 .....................................................................10

Va. Code § 36-96.20 ...................................................................11

Va. Code § 36-96.3 ............................................................... 8, 9, 40

Va. Code § 36-96.8 ............................................................ 10, 23, 28

Va. Code § 36-96.9 ..................................................... 11, 23, 24, 28

Va. Code § 40.1-51.10 ...................................................................48

**Regulations**

24 C.F.R. § 5.703 ...........................................................................4

24 C.F.R. § 982.302 .......................................................................4

24 C.F.R. § 982.305 .......................................................................4

24 C.F.R. § 982.309 .......................................................................5

24 C.F.R. § 982.405 ....................................................................4, 6

24 C.F.R. § 982.453 .....................................................................48

24 C.F.R. § 982.507 .......................................................................4

32 C.F.R. § 634.8 ..........................................................................47

49 C.F.R. § 383.72 ........................................................................47

**Other Authorities**

HOME of Virginia, *Choice Constrained: Limited Housing Options for Households Utilizing Housing Choice Vouchers* (May 14, 2019), https://homeofva.org/wp-content/uploads/2019/07/Choices-Constrained-2019_5_14_19.pdf...........................................................9

HUD-52641 Form .................................................................5, 6, 8, 46

Poverty & Race Research Action Council, *State, Local, and Federal Laws Barring Source-of-Income Discrimination* (Jan. 2025), https://www.prrac.org/pdf/AppendixB.pdf .............................................9

# INTRODUCTION

Plaintiffs Lucinda LC and June Wheatley do not want to comply with Virginia's law requiring them not to discriminate against indigent people who receive federal vouchers. So, they devised a theory by which the requirement violates their right against search and seizure, and they filed this parallel action to stop state enforcement proceedings before they are completed. The district court correctly determined that abstaining from interfering with those proceedings was likely proper. And it correctly ruled, in the alternative, that the plaintiffs were unlikely to succeed on their Fourth Amendment claims in any event.

The federal Housing Choice Voucher Program is the largest rent subsidy program in the country. Millions of families depend on vouchers to move to high opportunity areas, where their kids can walk to good schools on safe streets while parents can use nearby public transit to access jobs. But they can only do so if landlords will rent to them. Because landlord refusal to rent to voucher holders has long impeded Virginians from realizing that dream, Virginia passed a law prohibiting housing providers from discriminating against prospective tenants because of their vouchers. Lucinda LC and June Wheatley (collectively, "Lucinda"),

landlords who refuse to rent to Housing Choice Voucher holders, have claimed that this law violates the Fourth Amendment.

In denying Lucinda's motion for a preliminary injunction, the district court recognized that *Younger* abstention was likely proper and declined to interfere with ongoing state enforcement proceedings. The district court also explained that Lucinda's Fourth Amendment claim was unlikely to succeed for several other reasons: Lucinda lacks standing, its claim is not ripe, and its claim fails on the merits. This Court should affirm.

## ISSUES PRESENTED

1.     Where the Virginia Real Estate Board was conducting ongoing administrative enforcement proceedings pursuant to a state statutory scheme created to enforce the Virginia Fair Housing Law, did the district court correctly conclude that abstaining from interfering with those proceedings was likely proper?

2.     Where Lucinda had not entered into a Housing Assistance Payments contract, been subjected to an administrative search, or identified any enforcement efforts where an inspection was conducted over a landlord's objection in connection with the federal Housing Choice

Voucher Program, did the district court correctly determine that Lucinda lacked standing to bring a Fourth Amendment claim and that its Fourth Amendment claim was not ripe?

3. Where Virginia's statutory scheme can be read consistently with a landlord's opportunity for review by a neutral decisionmaker before being subjected to an administrative search or to penalties for refusing to submit to the search, did the district court correctly determine that Lucinda failed to state a Fourth Amendment claim as a matter of law?

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to consider this appeal. 28 U.S.C. § 1292(a)(1). As the district court correctly concluded, however, it lacked jurisdiction over Lucinda's claims, because Lucinda lacks standing and its claims are not ripe. JA35–37.

## STATEMENT

### A. Congress creates the Housing Choice Voucher Program

Congress created the Housing Choice Voucher (also known as "Section 8") program to "aid[] low-income families in obtaining a decent place to live" and "promot[e] economically mixed housing." 42 U.S.C.

§ 1437f(a). Under the program, voucher-holding families may look for rental housing in any neighborhood. When a voucher-holding family identifies a unit and a landlord agrees to rent to them, the landlord submits a "request for approval of the tenancy" and a copy of the lease to the relevant locality's public housing agency ("local agency"). 24 C.F.R. § 982.302(c). The local agency then inspects the unit to ensure that it complies with HUD's Housing Quality Standards, *id.* §§ 982.305, 982.405. The Housing Quality Standards apply to the unit itself, the entrances and exits, common areas, and systems that serve the unit, such as boiler rooms. *Id.* § 5.703(a). If the unit passes inspection, and the other requirements, including "rent reasonableness," are met, *id.* §§ 982.305, 982.507, the local agency will approve the tenancy and enter into a Housing Assistance Payments contract (the "Contract") with the landlord, *id.* § 982.305. The two primary inspections that a local agency conducts—the inspection of the unit and any review of records for rent reasonableness—thus happen before a landlord signs the Contract. *See id.* § 982.305(a) ("The [local agency] may not give approval for the family of the assisted tenancy, or execute a [Housing Assistance Payments] contract, until the [local agency] has determined that . . . the unit has

been inspected by the [local agency] and passes [HUD's Housing Quality Standards] . . . [and] [t]he rent to owner is reasonable.").

When tenancy is approved, Housing Choice Voucher Program "participation is formalized in two separate contractual agreements: (1) the [Housing Assistance Payments] contract . . . and (2) a lease agreement between the private landlord and the tenant." *Kirby v. Richmond Redevelopment & Hous. Auth.*, No. 3:04-cv-791, 2005 WL 5864797, at *6 (E.D. Va. Sept. 28, 2005).

The Contract is coextensive with the term of the tenancy. 24 C.F.R. § 982.309. Under the Contract, "[t]he owner must provide any information pertinent to the [Housing Assistance Payments] contract that the [local agency] or HUD may reasonably require," HUD-52641 Form, Part B, 11(a); "[t]he [local agency], HUD and the Comptroller General of the United States shall have full and free access to the contract unit and premises, and to all accounts and other records of the owner that are relevant to the [Housing Assistance Payments] contract, including the right to examine or audit the records and to make copies," *id.* at 11(b); and "[t]he owner must grant such access to computerized or other electronic records, and to any computers, equipment or facilities

containing such records, and must provide any information or assistance needed to access the records," *id.* at 11(c). Once a tenant has moved in, the local agency inspects the unit biennially. 24 C.F.R. § 982.405; 42 U.S.C. § 1437f(o)(8).

**B.**   **When a landlord objects to an inspection of property in which she has a reasonable expectation of privacy, the Fourth Amendment requires an opportunity for review by a neutral decisionmaker**

Inspections that "serve a 'special need' other than conducting criminal investigations" are considered "administrative searches" for Fourth Amendment purposes. *City of Los Angeles v. Patel*, 576 U.S. 409, 420 (2015). For administrative searches seeking "investigative entry upon commercial establishments," the requisite probable cause determination is measured on "a flexible standard of reasonableness that takes into account the public need for effective enforcement of the particular regulation involved." *See v. City of Seattle*, 387 U.S. 541, 545 (1967) .

Just as with searches conducted in connection with criminal investigations, consent and exigency exceptions exempt the need for any pre-search process. *Patel*, 576 U.S. at 420. And absent consent or some other exception, the Fourth Amendment requires that the landlord "may

obtain judicial review of the reasonableness of the demand" before being subjected to an administrative search or suffering penalties for refusing to comply. *See*, 387 U.S. at 545; *see also Patel*, 576 U.S. at 420 ("absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker"). Apart from the opportunity to obtain review before a neutral decisionmaker, the Supreme Court has set no strictures on the "exact form" of this "minimal requirement." *Id.* at 421; *see also Benjamin as Tr. of Rebekah C. Benjamin Tr. v. Stemple*, 915 F.3d 1066, 1071 (6th Cir. 2019) (rejecting argument that "ordinance fails to provide neutral criteria to guide the hearing officer's decision making," and confirming that Fourth Amendment "requires only 'precompliance review before a neutral decisionmaker'" under *Patel*).

Lucinda has not identified any instances in which a landlord who has been approached by a Housing Choice Voucher holder has objected to an inspection associated with the Contract. As a result, there is no evidence in the record demonstrating how a local agency or HUD would implement this minimal requirement when faced with such an objection.

Nothing in Virginia law or the Contract authorizes a local agency or HUD to conduct an administrative search without first providing the process that the Fourth Amendment requires. *See* Va. Code § 36-96.3(A)(1)–(7); HUD-52641 Form. And Lucinda has not identified a single instance in which a local agency or HUD has interpreted the Contract as consent to conduct an inspection over a landlord's objection, let alone an instance in which a local agency or HUD actually conducted an inspection over a landlord's objection without providing an opportunity to obtain review before a neutral decisionmaker.

C. **Virginia enacts a source-of-funds provision and an administrative enforcement mechanism**

Discrimination against Housing Choice Voucher holders has long posed an obstacle to Virginia's goals of allowing Virginians to provide a better life for themselves and their children by providing decent housing to low-income families and economically integrated neighborhoods. According to a 2019 study, fewer than 30% of apartment complexes in the Richmond metropolitan area accepted vouchers from families using Housing Choice Vouchers, limiting the housing options available to those families. *See* HOME of Virginia, *Choice Constrained: Limited Housing Options for Households Utilizing Housing Choice Vouchers* (May 14,

2019), https://homeofva.org/wp-content/uploads/2019/07/Choices-Constrained-2019_5_14_19.pdf.[1] Moreover, the few buildings that did accept vouchers were concentrated in segregated, low-opportunity neighborhoods, *id.*, thwarting Virginia's goal to promote economically integrated housing.

To respond to this problem and further its goals of promoting housing choice and residential integration, Virginia amended the Virginia Fair Housing Law in 2020 to make it unlawful to refuse to sell, rent, negotiate the sale or rental, or otherwise make unavailable a dwelling because of "source of funds." Va. Code § 36-96.3(A)(1)–(7) (the "source-of-funds provision"). In prohibiting source-of-funds discrimination, Virginia joined more than a dozen states that have enacted similar provisions. Poverty & Race Research Action Council, *State, Local, and Federal Laws Barring Source-of-Income Discrimination* (Jan. 2025), https://www.prrac.org/pdf/AppendixB.pdf.[2]

---

[1] *See also* Dkt. No. 28 at 5 (citing HOME of Virginia publication in opposition to motion for preliminary injunction).

[2] *See also* Dkt. No. 28 at 5 n.2 (citing Poverty & Race Research Action Council publication in opposition to motion for preliminary injunction).

The Virginia Fair Housing Law does not mention the Housing Choice Voucher Program explicitly, but it defines "source of funds" as "any source that lawfully provides funds to or on behalf of a renter or buyer of housing, including any assistance, benefit, or subsidy program, whether such program is administered by a governmental or nongovernmental entity." Va. Code § 36-96.1:1. The provisions apply only to landlords renting five or more units. *Id.* § 36-96.2.

Under the Virginia Fair Housing Law, the Real Estate Board and the Fair Housing Board are authorized "to initiate and receive complaints, conduct investigations . . . attempt resolution of complaints by conference and conciliation, and, upon failure of such efforts, issue a charge and refer it to the Attorney General for action." Va. Code § 36-96.8.

Upon receipt or initiation of a complaint, the relevant Board must provide notice to the respondent "identifying the alleged discriminatory housing practice and advising such respondent of the procedural rights and obligations of respondents under [the Virginia Fair Housing Law] with a copy of the original complaint and copies of any supporting

documentation referenced in the complaint," and the respondent may file an answer. Va. Code § 36-96.9.

The Virginia Fair Housing Law requires the relevant Board to "commence proceedings with respect to a complaint within thirty days," empowers the Board to issue subpoenas, and provides that the Board will produce a final investigative report that must be made available to the parties. *Id.* § 36-96.10. The Board must then either (1) determine that there is reasonable cause to believe a discriminatory housing practice has occurred or is about to occur, or (2) dismiss the complaint. *Id.* §§ 36-96.11, 36-96.12. If there is reasonable cause and conciliation is unsuccessful, then the Board must issue a charge and refer it to the Virginia Attorney General, *id.* § 36-96.14, who must initiate a civil action on behalf of the complainant, *id.* § 36-96.16. In addition, where a reasonable cause determination has been made regarding an individual or entity with a real estate license, the Real Estate Board may initiate an administrative hearing to determine whether to issue sanctions. *Id.* § 36-96.20.

Lucinda has not identified any instance in which the Commonwealth of Virginia has ever enforced its source-of-funds

provision against a landlord for objecting to the execution of an inspection without an opportunity for precompliance review.

**D.    The Virginia Real Estate Board initiates enforcement proceedings against Lucinda for an alleged violation of the source-of-funds provision**

On July 29, 2025, the Virginia Fair Housing Office, an arm of the Fair Housing Board and the Real Estate Board, received a complaint from the Housing Rights Initiative about Plaintiffs Lucinda LC and June Wheatley. JA91. The Housing Rights Initiative is a non-profit organization that deploys individuals as "testers" to investigate whether landlords would refuse to rent to tenants in a discriminatory manner. JA69, 91, 94–95. One of the Housing Rights Initiative's testers contacted Plaintiff June Wheatley, who manages the nine-unit rental property owned by Plaintiff Lucinda LC. JA69–70. The tester posed as a renter interested in one of the Lucinda LC units, and he asked Ms. Wheatley: "I have section 8. Would I be able to use that?" *Id*. Ms. Wheatley replied: "The owner group does not accept any housing vouchers." *Id*. When the tester confirmed—"Oh so I wouldn't be able to use Section 8 here?"—Ms. Wheatley said "correct." *Id*.

Accordingly, the Housing Rights Initiative complaint (the "non-profit complaint") alleged that Plaintiffs Lucinda LC and June Wheatley (collectively, "Lucinda") refuse to rent to Housing Choice Voucher holders in violation of the source-of-funds provision. JA91. All parties agree that the allegations in the non-profit complaint are premised on the investigation of a "tester." JA93–94. There is no record evidence indicating that an actual Housing Choice Voucher holder has sought to rent from Lucinda, or that Lucinda has submitted a request for tenancy approval or entered into the Contract.

The Virginia Fair Housing Office provided Lucinda with notice of the non-profit complaint and an opportunity to "file an answer to the complaint, which may include any defenses that respondents could assert in a court of law." JA91. Lucinda submitted an answer stating that (1) Lucinda does accept some vouchers, but not Housing Choice Vouchers; (2) the source-of-funds provision does not require landlords to rent to Housing Choice Voucher holders; and (3) interpreting the source-of-funds provision otherwise would violate the Contracts Clause of the U.S. Constitution. JA94–97. The answer did not mention any Fourth Amendment defenses or concerns. JA94–97. The Board's investigation of

the non-profit complaint against Lucinda is ongoing; the Board has not yet issued a reasonable cause determination or prepared a final investigative report. JA92.

### E. Lucinda brings a lawsuit in federal court while the state enforcement proceedings against it remain ongoing

On January 27, 2026, while the state enforcement proceeding was still pending, Lucinda brought this lawsuit, which alleges that the source-of-funds provision violates the Fourth and Fourteenth Amendments.[3] JA63–80. Lucinda's complaint framed its Fourth amendment claim as both a facial and as-applied challenge. JA77–78. Specifically, Lucinda claims that: (1) Virginia's source-of-funds provision requires landlords to participate in the Housing Choice Voucher Program; (2) HUD mandates that landlords participating in the Housing Choice Voucher Program enter into the Contract that provides that the local agency and HUD shall have "full and free access" to the relevant

---

[3] Lucinda also alleged that the source-of-funds provision violated the Supremacy Clause. JA63–80. Because Lucinda has not raised any issues on appeal in connection with its preemption claim under the Supremacy Clause, *see* Opening Br. 1–5, this brief does not address Lucinda's preemption claim.

unit and records; and (3) the interaction between the source-of-funds provision and the Contract amount to coerced consent to warrantless searches of the landlord's property and records—even though neither the Contract nor the source-of-funds provision authorizes a local agency or HUD to conduct a search without providing the process that the Fourth Amendment requires. *See, e.g.*, JA75; Opening Br. 17–18.

On March 9, 2026, Lucinda filed a motion for a preliminary injunction. JA60 (Dkt. No. 24). On April 10, 2026, the Court held a hearing and issued a decision from the bench denying the motion, JA1–47, followed by a written order, JA48. Lucinda appealed.

## STANDARD OF REVIEW

This Court reviews the question of whether a district court had authority to abstain *de novo*, and a court's ultimate decision to surrender jurisdiction for abuse of discretion. *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 328 n.3 (4th Cir. 2022); *VonRosenberg v. Lawrence*, 781 F.3d 731, 734 (4th Cir. 2015), *as amended* (Apr. 17, 2015).

This Court reviews a district court's dismissal for lack of standing and ripeness *de novo. Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013).

This Court reviews a district court's decision to grant or deny injunctive relief for abuse of discretion. *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 192 (4th Cir. 2013) (en banc). If the district court "applied a correct preliminary injunction standard, made no clearly erroneous findings of material fact, and demonstrated a firm grasp of the legal principles pertinent to the underlying dispute," then no abuse of discretion occurred. *Id.* at 192.

## SUMMARY OF ARGUMENT

The district court correctly applied the law and did not abuse its discretion in denying a preliminary injunction on Lucinda's Fourth Amendment claim.

First, this Court should affirm the district court's conclusion that abstention was likely proper under *Younger v. Harris*, 401 U.S. 37 (1971). The Virginia Real Estate Board initiated quasi-criminal administrative enforcement proceedings pursuant to a state statutory scheme created to enforce the Virginia Fair Housing Law before Lucinda filed its complaint in federal court, and those state enforcement proceedings remain ongoing.

Second, this Court should alternatively affirm under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 501 (1941). Because Lucinda is not at risk of being subject to a search under the terms of the Contract (which it has not executed), its claim requires this Court to determine whether a landlord would be sanctioned under the Virginia source-of-funds provision for refusing to accept Housing Choice Vouchers based on its purported concerns about the availability of precompliance review before submitting to inspections. That is a novel question of state law, and this Court should not countenance Lucinda's efforts to circumvent state agencies' and state courts' role in interpreting this important area of Virginia law in the first instance.

Third, this Court should conclude that Lucinda's Fourth Amendment claim was unripe and that Lucinda lacked standing. The district court correctly found that Lucinda demonstrated no actual or imminent harm from an inspection pursuant to the Contract. Lucinda had not entered into the Contract, so it faced no risk of being subjected to any inspection pursuant to the Contract, constitutional or otherwise. And the question of whether Lucinda would be sanctioned for interposing a request for precompliance review before submitting to an inspection—

despite Lucinda's failure to identify any efforts to enforce the source-of-funds provision or the Contract in that manner—requires engaging with so many hypotheticals and contingencies that the question is not fit for judicial review.

Finally, if this Court reaches the merits of Lucinda's Fourth Amendment claim, it should affirm the district court's denial of a preliminary injunction. The district court correctly determined that Lucinda was not likely to succeed in showing a conflict between Virginia's source-of-funds provision and the Fourth Amendment protections afforded to administrative searches. Nothing in Virginia's source-of-funds provision or in the Contract that landlords execute upon being approved to rent to Housing Choice Voucher holders prohibits a landlord from insisting on precompliance review before providing HUD or a local agency with access to its records or premises.

## ARGUMENT

### I.    *Younger v. Harris* **requires abstention**

Under *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny, federal courts must abstain from exercising jurisdiction over matters related to "quasi-criminal proceedings if the state proceeding is ongoing,

implicates important state interests and provides an adequate opportunity to raise constitutional challenges." *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 93 (4th Cir. 2022); *see also Ohio Civ. Rts. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 (1986). The district court correctly recognized that the ongoing civil enforcement proceedings against Lucinda "are quasi criminal in nature . . . [and] support the state's important interest in combatting housing discrimination, and plaintiffs can raise their constitutional challenges before the boards and in any subsequent state court actions." JA33–34.

Virginia has established an administrative law enforcement process for enforcing the Virginia Fair Housing Law against those who discriminate in housing transactions on the basis of a protected characteristic. This unified enforcement process is a proper way for Virginia to enforce its fair housing law, and Lucinda sought the extraordinary remedy of a preliminary injunction that would stop that process in its tracks. That is the exact incursion into state autonomy that *Younger* prohibits. "*Younger*'s main concern has always been whether federal jurisdiction will 'unduly interfere' with pending state proceedings" by leaving states with, in the best case, a choice of whether

to engage in duplicative litigation, and in the worst case, a federal court "permanently" ending "legitimate activities of the States." *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 332 (4th Cir. 2022) (citations omitted).

Under *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), when considering *Younger* abstention, courts must first decide whether *Younger* applies to the type of proceeding at issue. Second, courts must consider whether the additional factors identified in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), favor abstention. *Air Evac EMS*, 37 F.4th at 96. Where both steps are satisfied, courts have a duty to abstain.[4] This test makes clear that the district court correctly concluded that abstention is likely appropriate here.

Indeed, in a lawsuit nearly identical to this one in the Second Circuit, both the district court and the appellate court held that *Younger* abstention applied where the plaintiff was subject to an ongoing

_____

[4] This Court has recognized three exceptions to a court's duty to abstain under *Younger* when both of these steps are satisfied. *See Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 96 (4th Cir. 2022). The district court concluded no such exceptions were present. JA34. Because Lucinda has not argued that an exception is present here, any such argument is forfeited. *See* Opening Br. 37–50.

administrative enforcement proceeding. *216 E. 29th St. Tr. v. City of New York,* No. 24-cv-595 (ER), 2025 WL 315380, at \*7–9 (S.D.N.Y. Jan. 28, 2025), *aff'd*, No. 25-465-cv, 2025 WL 3264312, at \*2–4 (2d Cir. Nov. 24, 2025). There, the plaintiff was the subject of an administrative complaint filed by a third party and served on him by the New York City Commission on Human Rights, and the Commission had not yet issued a cause determination. 2025 WL 315380, at \*4. The district court held that *Younger* abstention applied because the administrative proceeding was an ongoing civil enforcement proceeding, implicated important state interests in combatting housing discrimination, and provided an adequate opportunity to raise legal challenges because the suit was properly construed as an as-applied challenge, which could be raised through judicial review of the administrative proceeding. *Id.* at \*7–9. The Second Circuit affirmed, holding that even if the plaintiff brought a facial challenge, that challenge could be raised in a state court proceeding challenging the administrative determination. 2025 WL 3264312, at \*3.

This Court should reach the same conclusion. As in *216 East 29th Street Trust*, here, a third party filed a complaint against Plaintiffs, Plaintiffs were served by the government agency tasked with

investigation, and no cause determination has yet been made. The same result should follow.

### A. State administrative proceedings conducted to enforce the Virginia Fair Housing Law are quasi-criminal

*Younger* abstention applies to the administrative enforcement proceedings arising from the non-profit complaint against Lucinda. *Younger* governs civil enforcement proceedings that are "'akin to a criminal prosecution' in 'important respects,'" which courts commonly call "quasi-criminal" proceedings. *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 96 (4th Cir. 2022) (quoting *Sprint Commcns., Inc. v. Jacobs*, 571 U.S. 69, 78–79 (2013)). To determine whether an ongoing state civil enforcement proceeding is "quasi-criminal," this Court considers whether "the enforcement is 'initiated to sanction the federal plaintiff,' the 'state actor is routinely a party to the state proceeding and often initiates the action' and '[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges.'" *Air Evac EMS*, 37 F.4th at 97 (quoting *Sprint*, 571 U.S. at 79–80).

The administrative proceedings here fit the bill. Administrative proceedings before the Real Estate Board are initiated to investigate and sanction those who discriminate in housing transactions on the basis of

a protected characteristic in violation of the Virginia Fair Housing Law, as Lucinda allegedly did here. JA91. Virginia has established an administrative law enforcement process for enforcing the Virginia Fair Housing Law that can be initiated by a private party or by an arm of the Commonwealth. *See* Va. Code § 36-96.8 (Fair Housing Board, Real Estate Board, or their designees may initiate complaint). Whether initiated by the state or a private party, the complaint then progresses to a state-led investigation, Va. Code § 36-96.10, during which respondents are entitled to notice, an opportunity to respond, and an ability to review the final investigation report. *See id.* §§ 36-96.9, 36-96.10. During the investigation, the state may issue subpoenas and call witnesses. *Id.* § 36-96.10. That investigation necessarily results either in dismissal, *id.* § 36-96.12, or a reasonable cause determination and filing of a formal charge, *id.* §§ 36-96.11, 36-96.14. After the filing of a formal charge, the parties engage in conciliation and, if a resolution is not possible, the Real Estate Board must refer the case to the Virginia Attorney General, *id.* § 36-96.14, who must initiate a civil action on behalf of the complainant, *id.* § 36-96.16.

The statutory scheme therefore makes plain that Virginia agencies routinely are a party to and initiate proceedings to formally investigate and enforce the Virginia Fair Housing Law against those who discriminate in housing transactions on the basis of a protected characteristic. *See* Va. Code §§ 36-96.9, 36-96.10, 36-96.11, 36-96.12, 36-96.14. As the district court found, the non-profit complaint initiated "mandatory ongoing investigations prosecuted by state officials with an eye to sanction plaintiffs that may culminate in the filing of a formal complaint or charges in state circuit court or before the Real Estate Board." JA33–34. That is the sort of quasi-criminal proceeding to which *Younger* applies. *Air Evac EMS*, 37 F.4th at 97.

That the proceeding was initiated by a non-governmental party does not alter the necessity of abstention in this case. In *Sprint*, the Supreme Court explicitly left open this possibility in explaining that enforcement proceedings are quasi-criminal where a "state actor is routinely a party to the state proceeding and *often* initiates the action," *Sprint*, 571 U.S. at 79 (emphasis added).

The comity interests undergirding *Younger* make clear why abstention is warranted for privately initiated administrative

proceedings to which states are not only routine parties but assume the role of primary enforcer of state law. *See Dayton Christian Schs.*, 477 U.S. at 627. States are entitled to establish their law enforcement schemes according to their resources and priorities. In enforcing its laws, a state may reasonably rely in part on private individuals bringing complaints in light of the state's own resource constraints and desire to cast a wide net to identify infractions. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 550 (2018) (Ginsburg, J., dissenting) ("Because of their limited resources, however, government agencies must rely on private parties to take a lead role in enforcing . . . laws."). Failing to abstain based on the manner in which a state has chosen to initiate its law enforcement actions would not serve the comity interests *Younger* protects.

Accordingly, this Court has already concluded that privately initiated proceedings can require abstention. In *American Civil Liberties Union v. Bozardt*, 539 F.2d 340 (4th Cir. 1976), the Fourth Circuit applied *Younger* to a state bar disciplinary committee's ongoing investigation of an ethics complaint. *Id.* at 342–44. Likewise, state civil rights administrative enforcement proceedings that were first initiated via private parties have triggered *Younger* abstention. *See, e.g.*, *Ohio Civil*

*Rights Comm'n*, 477 U.S. at 624 (abstention appropriate during administrative proceedings arising from a discrimination complaint received by state civil rights commission); *216 E. 29th St. Tr.*, 2025 WL 315380, at *8–9 (S.D.N.Y. Jan. 28, 2025) (abstaining in light of privately initiated proceedings in case with a nearly identical posture).

## B. The enforcement proceedings are ongoing and sufficiently judicial in nature

The district court found that the *Middlesex* factors favor abstention. JA33–34. Because Lucinda has forfeited any argument that the state proceeding does not implicate important state interests or provide an adequate opportunity to raise constitutional challenges by failing to raise it in the opening brief,[5] *see* Opening Br. 37–50, the only remaining factor at issue in this appeal is the first one: whether the ongoing enforcement proceedings are sufficiently judicial in nature to warrant *Younger* abstention. *See Air Evac EMS*, 37 F.4th at 96. As Lucinda acknowledges,

---

[5] As the district court correctly concluded, the ongoing proceedings implicate the "state's important interest in combatting housing discrimination," and "plaintiffs can raise their constitutional challenges before the boards and in any subsequent state court actions." JA34.

this *Middlesex* factor assesses both whether the proceeding is "ongoing" and whether it is sufficiently "judicial in nature." Opening Br. 46–47.

To the extent that Lucinda suggests that the "judicial *in nature*" factor is satisfied only where court proceedings have commenced, or that state law must expressly characterize the proceeding at issue as "judicial" rather than "administrative," that is incorrect. The Supreme Court has recognized that the "concern for comity and federalism" that animates *Younger* abstention "is equally applicable to certain other pending state proceedings," including "administrative proceedings" initiated via the filing of a "complaint" and followed by the filing of an "answer." *Dayton Christian Schs.*, 477 U.S. at 623–24.

This Court's precedent explaining which proceedings are *not* sufficiently judicial in nature is instructive. For example, in *Telco Communications, Inc. v. Carbaugh*, 885 F.2d 1225, 1228 (4th Cir. 1989), this Court contrasted the agency's "informal fact-finding conference" with cases involving "formal, ongoing state proceedings," like the administrative proceeding in *Dayton Christian Schools. Telco Commc'ns, Inc.,* 885 F.2d at 1228.

The investigation and adjudication of the non-profit complaint against Lucinda are formal "proceedings," Va. Code § 36-96.10, that are subject to detailed procedures and afford protections to Lucinda. *See id.* §§ 36-96.8–36-96.15. Pursuant to the process established in Section 36-96.9 of the Virginia Code, the Fair Housing Office received a written complaint alleging that Lucinda committed a violation of the Virginia Fair Housing Law. JA91. In turn, the Fair Housing Office provided Lucinda with notice that it had accepted the non-profit complaint for investigation. JA91. Rather than holding an informal fact-finding conference, the Fair Housing Office proceeded to the next formal step in the code: it informed Lucinda that it had an opportunity to "file an answer to the complaint, which may include any defenses that respondents could assert in a court of law." JA91; *see also* Va. Code § 36-96.9(C). Lucinda, through counsel, submitted an answer to the complaint, which pressed various statutory and constitutional defenses in support of dismissing the complaint. JA94–97; *cf. Dayton Christian Schs.*, 477 U.S. at 624. Following that answer, the Fair Housing Office issued a response explaining that the state agency's investigation of the complaint remains ongoing. JA92. This formal process more closely mirrors *Dayton*

*Christian Schools* than *Telco*, and the district court correctly held that *Younger* abstention likely applies to these formal proceedings. JA33–34 (citing *Dayton Christian Schools*).

Likewise, even where no court proceeding has yet begun, an ongoing investigation that is judicial in nature can satisfy the "ongoing" requirement of this factor. For example, in *Bozardt*, this Court applied *Younger* to a state bar disciplinary committee's ongoing investigation of an ethics complaint. 539 F.2d at 342–44.

Here, Virginia's statutory scheme establishes that the investigation remains ongoing. JA91. This, too, distinguishes the present case from *Telco*. There, the Court emphasized that, under Virginia's Administrative Process Act, an "informal conference need not be followed by the institution of formal proceedings" and is accordingly "not indicative of whether administrative proceedings will continue." *Telco Commc'ns*, 885 F.2d 1225, 1228 (4th Cir. 1989). In contrast, under Virginia's administrative law enforcement process for enforcing the Virginia Fair Housing Law, an investigation must result in either dismissal, *id.* § 36-96.12, or a reasonable cause determination and filing of a formal charge, *id.* §§ 36-96.11, 36-96.14. Because neither dismissal

nor a formal charge has issued to date, the investigation plainly remains ongoing. JA91.

## II. This Court should alternatively abstain under *Railroad Commission of Texas v. Pullman Co.*

If this Court does not affirm on *Younger* abstention grounds, then *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 501 (1941), presents another basis on which this Court should abstain. *Pullman* abstention applies where "'there is (1) an unclear issue of state law presented for decision (2) the resolution of which may moot or present in a different posture the federal constitutional issue such that the state law issue is potentially dispositive.'" *Wise v. Circosta*, 978 F.3d 93, 101 (4th Cir. 2020) (quoting *Educ. Servs., Inc. v. Md. State Bd. for Higher Educ.*, 710 F.2d 170, 174 (4th Cir. 1983)).[6]

Because Lucinda was approached by a "tester" and not by any actual Housing Choice Voucher holder seeking tenancy, and has therefore not submitted a request for tenancy approval or entered into

---

[6] This Court can consider abstention arguments that were not presented to the district court. *See Caleb Stowe Assocs., Ltd. v. Albemarle Cnty.*, 724 F.2d 1079, 1080 (4th Cir. 1984) (citing *AFA Distributing Co. v. Pearl Brewing Co.,* 470 F.2d 1210, 1213 (4th Cir. 1973)).

the Contract, *see supra* at 12–13, Lucinda has not been subject to any search, nor is it currently at any risk of being subject to a search. That means that its standing and injury in this case turn on its assertion that sanctions would issue under the source-of-funds provision against landlords who refused to accept Housing Choice Vouchers based on their unwillingness to consent to inspections without an opportunity for precompliance review.

That asserted injury assumes the answer to a novel question of state law. No Virginia state court or relevant state board has considered whether a landlord's refusal to accept Housing Choice Vouchers based on a purported concern about submitting to inspections without an opportunity for review by a neutral decisionmaker would violate Virginia's source-of-funds provision. And the answer to that question could moot Lucinda's Fourth Amendment objection altogether.

State courts have considered landlords' objections to participation in the Housing Choice Voucher Program in connection with other states' source-of-funds provisions, and they have decided the legitimacy of those objections as a defense on a case-by-case basis. For example, courts have held that generalized claims about the administrative burden of renting

to voucher holders do not exempt landlords from participation in the Housing Choice Voucher Program. *See Feemster v. BSA Ltd. P'ship*, 548 F.3d 1063, 1070–71 (D.C. Cir. 2008). In contrast, at least some objections that "reach [a] Constitutional threshold" may provide for such an exemption. *See Montgomery Cnty. v. Glenmont Hills Assocs. Privacy World*, 936 A.2d 325, 336 (Md. 2007) (administrative burden provides valid reason for non-participation in Housing Choice Voucher Program only where "landlord can establish a burden so severe as to constitute a taking of its property or the violation of due process"); *cf. Peyton v. Reynolds Assocs.*, 955 F.2d 247, 254 (4th Cir. 1992) (particularized objection to Housing Assistance Payments contract term did not necessarily amount to discrimination on the basis of voucher holder status where landlord otherwise rented to voucher holders).

In the ongoing enforcement proceedings before the state agency, Lucinda had an opportunity to raise the question of whether a landlord's refusal to accept Housing Choice Vouchers based on concerns about the availability of precompliance review before submitting to inspections would violate the source-of-funds provision (though it has declined to do so to date, *see* JA94–97). JA91. And if the Real Estate Board issues a

formal charge and refers it to the Attorney General, and the Attorney General decides to initiate civil proceedings, Va. Code §§ 36-96.14, 36-96.16, then Lucinda would once again have an opportunity to raise this question of state law in state court. This Court should not permit Lucinda to make an end-run around the state agency and state courts to ask this Court to opine on a novel issue of Virginia law in the first instance. Accordingly, *Pullman* provides an additional basis for this court to abstain.

## III. Lucinda's Fourth Amendment claim is not ripe

The district court also correctly determined that Lucinda's Fourth Amendment claim is not ripe. "The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'" *Miller v. Brown*, 462 F.3d 312, 318–19 (4th Cir. 2006) (quoting *Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549, 584 (1947)). "The burden of proving ripeness falls on the party bringing suit." *Id.*

In determining whether a claim is ripe, courts consider the fitness of the issues for judicial decision and the hardship of withholding court consideration. *Texas v. United States*, 523 U.S. 296, 300–01 (1998). A claim is fit for judicial decision where it is "not dependent on future

uncertainties," *Miller*, 462 F.3d at 318–19, whereas "[t]he hardship prong is measured by the immediacy of the threat and the burden imposed on the [plaintiff] who would be compelled to act under threat of enforcement of the challenged law." *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992). Lucinda's Fourth Amendment claim satisfies neither prong of the ripeness test, which provides an independent basis to affirm.

First, the Fourth Amendment claim is not fit for judicial decision. Lucinda asserts that it is stuck between a rock and a hard place: suffer a violation of its Fourth Amendment rights, or face sanctions under the source-of-funds provision for standing on its Fourth Amendment rights. Opening Br. 17–18. That assertion is based on a series of premises: that (1) a Housing Choice Voucher holder would seek to rent one of Lucinda's units, and then (2) Lucinda would be approved for tenancy and sign the Contract, and then (3) the relevant government entities would interpret the Contract as amounting to consent to a warrantless search, and then (4) either (a) the government entities would conduct an inspection over Lucinda's objection, or (b) Virginia would impose sanctions against Lucinda for under the source-of-funds provision for refusing to submit to

an inspection absent precompliance review.

Even the first of those premises is not underway in this case. Nothing in the record indicates that Lucinda has been approached by any Housing Choice Voucher holder who is seeking to rent from Lucinda, let alone that Lucinda has submitted a request for tenancy approval or signed the Contract. Any threat of an inspection pursuant to the Contract therefore necessarily turns on future uncertainties.

Unpacking these premises only further demonstrates why this claim is unfit for judicial review. JA36. If a Housing Choice Voucher holder sought to rent one of Lucinda's units, Lucinda then would be required to submit a request for tenancy approval to the local agency. Upon receiving the request, the local agency would schedule an inspection. This request for tenancy approval and associated inspection take place before Lucinda is asked to enter into the Contract, and Lucinda has not alleged that submission of the request for tenancy approval itself amounts to consent to a search. Accordingly, there is no dispute that Lucinda could refuse to consent to the initial inspection absent an opportunity for precompliance review. In that scenario, it is entirely uncertain how a local agency would respond. On one hand, the

local agency could choose not to move forward, in which case Lucinda would not ever face the prospect of signing the Contract. On the other hand, the local agency might try to obtain precompliance review and conduct the inspection. In the latter scenario, if the local agency conducted the inspection, approved the tenancy, and approached Lucinda with the Contract, then the fact that the local agency had earlier conducted precompliance review could inform the consideration of whether the agency would do so under the Contract.

Where the record and pleadings are inadequate to establish the "precise operation" of the statute's application to the plaintiff's conduct, the plaintiff's claim is unfit for judicial review. *Telco*, 885 F.2d at 1234 (finding claim unripe where "'we know very little more about the operation of the [Virginia procedure] as a result of this lawsuit than we would if a prospective plaintiff who had never set foot in [Virginia] had simply picked this' off the statute books and filed this lawsuit" (alterations in original) (quoting *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588 (1972))).

Second, Lucinda also has not established that it faces sufficiently imminent hardship. To satisfy this prong, "[t]he threatened harm must

be 'immediate, direct, and significant.'" *Pearson v. Leavitt*, 189 F. App'x 161, 164 (4th Cir. 2006) (quoting *W. Va. Highlands Conservancy, Inc. v. Babbitt,* 161 F.3d 797, 800 (4th Cir. 1998)). Because Lucinda has not entered into the Contract or accepted any Housing Choice Vouchers, Lucinda faces no actual inspection, imminent or otherwise, at this time.

For overlapping reasons, Lucinda also lacks standing to bring a Fourth Amendment claim. *See South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) (explaining that "[a]nalyzing ripeness is similar to determining whether a party has standing," and that "in practice there is an obvious overlap between the doctrines of standing and ripeness" (quoting *Miller*, 462 F.3d at 319)). Because Lucinda has not been approached by a Housing Choice Voucher holder, Lucinda does not yet have any opportunity to submit a request for tenancy approval or enter into the Contract, and is unable to be subject to any search, constitutional or otherwise, in connection with that contract. Absent any concrete or imminent threat of being subjected to an inspection under the Contract, Lucinda lacks standing to challenge the combined effect of the source-of-funds provision and the Contract. *Id.* at 726–28.

Nor can Lucinda's alternative asserted injury—that it could be subject to sanctions under the source-of-funds provision for standing on its Fourth Amendment objection—fix its jurisdictional problem. As an initial matter, this speculative injury turns on state agencies' and state courts' interpretation of state law and on the outcome of the ongoing state enforcement proceeding, which reinforces why this Court should abstain on *Pullman* or *Younger* grounds. But even setting aside abstention, a matter is not ripe where it is based on speculative contentions about how a regulator will rule. *See Pearson*, 189 F. App'x at 164.

Ultimately, the district court correctly recognized that Lucinda's supposed threat of harm rests on a chain of hypotheticals and contingencies that renders the claim unripe and precludes Lucinda's standing altogether. JA35–37. The district court's findings that "no proceeding for refusal to accede [to a] search, demand for search, a [Housing Assistance Payments] contract, a civil complaint for source of income discrimination, reasonable cause determination, or even an actual renter, currently exist," and that Lucinda failed to "identify any historical instances of compelled searches under the [Virginia Fair Housing Law] or proceedings arising out of a landlord's failure to permit

such," compel the conclusion that Lucinda's Fourth Amendment claim is currently unfit for judicial review. JA36. This Court should affirm.

## IV. Lucinda's Fourth Amendment claim fails as a matter of law

### A. The district court correctly rejected Lucinda's facial challenge

The district court correctly concluded that Lucinda's facial challenge to the source-of-funds provision could not succeed. "Typically, a facial challenge requires a showing 'that the [provision] is unconstitutional in all of its applications, or that [it] lacks any plainly legitimate sweep.'" *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 167 F.4th 86, 100 (4th Cir. 2026) (alterations in original) (quoting *Edgar v. Haines*, 2 F.4th 298, 313 (4th Cir. 2021)). "Facial challenges are disfavored" for three primary reasons, all implicated here. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008). They "often rest on speculation" and "raise the risk of premature interpretation of statutes on the basis of factually barebones records." *Id.* They "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which

it is to be applied." *Id.* And they "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.*

In its preliminary injunction motion, Lucinda did not allege that the source-of-funds provision lacks any legitimate applications at all. Instead, it confined its challenge to enforcement of "the 'source of funds' provisions in the Virginia Fair Housing Law, Va. Code §§ 36-96.1, 36-96.3, *as applied to claims arising out of the non-acceptance of Section 8 vouchers*." Dkt. No. 24 at 1 (emphasis added). Even if the Court considered the source-of-funds provision's application only to Housing Choice Vouchers—though the Supreme Court has recently indicated it may not, *see Moody v. NetChoice, LLC*, 603 U.S. 707, 724–26 (2024) (facial challenge requires consideration of all applications of statute, not just challenged applications)—Lucinda's Fourth Amendment facial challenge would fail for two reasons.

First, the challenge is not to the terms of the statute, but to Lucinda's characterization of terms of an outside contract. As another court held in considering a nearly identical challenge to New York's analogous law, "the law on its face does not implicate the Fourth

Amendment because it does not require or even say anything about a search or seizure." *216 E. 29th St. Tr.*, 2025 WL 315380, at *8. Instead, the challenge "depends on a landlord and the [local agency] entering into a [Housing Assistance Payments] contract and the subsequent alleged 'coerced search'. . . A law cannot be facially invalidated based on the particulars of a contract drafted by a non-party, or based on particular facts about the plaintiff." *Id.*; *see also* JA35.

Second, Lucinda plainly could not demonstrate that all applications of the source-of-funds provision to landlords' non-acceptance of Housing Choice Vouchers violate the Fourth Amendment. Take, for one counterexample, enforcement of the provision against a landlord who would be willing to provide voluntary consent to an inspection by a local agency or HUD—obviating any potential Fourth Amendment concerns— but would still reject vouchers because of animus against voucher holders. Therefore, the district court correctly concluded that Lucinda could "not plausibly allege that the [Virginia Fair Housing Law] is unconstitutional in all its applications or that it lacks any plainly legitimate sweep." JA35.

Lucinda attempts to further refine the scope of its facial challenge on appeal, now purporting to limit the challenge "only to enjoin enforcement regarding sources of funds, like Section 8, that require landlords to waive constitutional rights." Opening Br. 29. That framing, of course, begs the underlying merits question. In any event, because determining whether any applications of the source-of-funds provision violate the Fourth Amendment requires working through a chain of hypothetical events and contingencies, *see supra* at 34–36, Lucinda could not succeed on a facial challenge even under this narrowed scope. The Supreme Court has made clear that courts must not "go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange*, 552 U.S. at 450. Determining a facial challenge based on speculation implicates all three concerns the Court warned of—it risks premature statutory interpretation, anticipates and needlessly decides questions of constitutional law, and undercuts the democratic process by assuming laws will be implemented unconstitutionally, rather than assuming the opposite, as courts must, *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988). These hypotheticals and contingencies

create "substantial ambiguity" as to the interaction between the Virginia source-of-funds provision and the Contract, which is fatal to a facial challenge. *Patel*, 576 U.S. at 416.

**B.   As written and enforced, the source-of-funds provision is compatible with a landlord's Fourth Amendment rights**

The source-of-funds provision does not interfere with the Fourth Amendment protections to which landlords are entitled in the context of an administrative search. Inspections of landlords' records and property conducted pursuant to the Contract "serve a 'special need' other than conducting criminal investigations," *Patel*, 576 U.S. at 420: they are designed to ensure that federal funds are spent on housing that meets HUD's housing quality standards and for rents that are reasonable relative to the market, 42 U.S.C. § 1437f(c), (o). Accordingly, they fall within the Supreme Court's "administrative search" framework, and absent content or some other exception, the subject of an inspection is entitled to an "opportunity to obtain precompliance review before a neutral decisionmaker." *Patel*, 576 U.S. at 420; *see also See*, 387 U.S. at 545; *Camara v. Mun. Ct. of the City & Cnty. of San Francisco*, 387 U.S. 523, 532 (1967).

Lucinda argues that signing the Contract requires it to surrender its Fourth Amendment rights. Accordingly, the first question this Court must confront on the merits is whether the Contract actually requires landlords to consent to conduct that the Fourth Amendment forbids. It does not.

In *Benjamin as Trustee of Rebekah C. Benjamin Trust v. Stemple*, the Sixth Circuit considered a Fourth Amendment challenge to an ordinance that required owners of vacant properties to register with the city clerk, where the registration form in turn required the property owner to "agree that in the event my property becomes dangerous as defined by [city or state law], I give permission for the City, its agents, employees, or representatives, to enter and board the premises or do whatever necessary to make the property secure and safe." 915 F.3d at 1068. The court did not stop at the form's permission to "enter and . . . do whatever necessary" and declare a Fourth Amendment violation. Instead, it looked at how the ordinance and the registration form had been "implemented by the city." *Id.*

In the six years since the source-of-funds provision was enacted, Lucinda has not identified a single implementation of the law that

permitted or required a local agency or HUD to conduct a search over a landlord's objection. *See supra* at 7–12. And absent any examples of implementation, nothing in the source-of-funds provision or the Contract demonstrates that landlords are signing away their Fourth Amendment rights.

If a landlord refused an inspection, nothing in the source-of-funds provision or the Contract authorizes the local agency to proceed with conducting the inspection without first obtaining precompliance review. The source-of-funds provision itself just prohibits discrimination in housing practices on the basis of a prospective resident's "source of funds." Va. Code § 36-96.3(A)(1)–(7). Nothing in that provision mentions searches, let alone mandates that landlords submit to warrantless searches. The source-of-funds provision also contains no punishment for failing to consent to an inspection. Virginia's practice has been consistent with this plain reading of the statute: Lucinda has not pointed to a single instance in which Virginia has treated a landlord's insistence on precompliance review before submitting to an inspection as a violation of the source-of-funds provision.

Lucinda's primary argument rests on an assumption about the

combined effect of the source-of-funds provision and the Contract that

landlords enter into upon being approved to rent to Housing Choice

Voucher holders. As described above, *supra* at 5–6, the Contract provides

that:

- "The owner must provide any information pertinent to the [Housing Assistance Payments] contract that the [local agency] or HUD may reasonably require," HUD-52641 Form, Part B, 11(a);

- "The [local agency], HUD and the Comptroller General of the United States shall have full and free access to the contract unit and premises, and to all accounts and other records of the owner that are relevant to the [Housing Assistance Payments] contract, including the right to examine or audit the records and to make copies," *id.* at 11(b); and

- "The owner must grant such access to computerized or other electronic records, and to any computers, equipment or facilities containing such records, and must provide any information or assistance needed to access the records," *id.* at 11(c).

Nowhere does the Contract (or any of the other governing statutes and

regulations that Lucinda cites) authorize a local agency or HUD to

conduct warrantless searches, let alone "mandate" that they do so. *Cf.*

Opening Br. 8.

Lucinda wrongly argues that this Court must read these provisions

to confer an affirmative grant of authority to housing authorities to

conduct inspections over a landlord's objection without first obtaining precompliance review, even though they say nothing of the sort. On the contrary, when the federal government wants to convey that a regulated person's conduct amounts to implied consent to a search, it has said so in express terms. *See* 32 C.F.R. § 634.8 ("Persons who drive on the installation *shall be deemed to have given their consent* to evidential tests for alcohol or other drug content of their blood, breath, or urine when lawfully stopped, apprehended, or cited for any offense allegedly committed while driving or in physical control of a motor vehicle on military installations to determine the influence of intoxicants." (emphasis added)); 49 C.F.R. § 383.72 ("Any person who holds a CLP or CDL or is required to hold a CLP or CDL *is considered to have consented* to [alcohol testing]. *Consent is implied* by driving a commercial motor vehicle." (emphasis added)).

Instead, nothing in HUD's regulations suggests that the Contract will be construed as implied consent to conduct a search over a landlord's objection. In contrast, as Lucinda acknowledges (*see* Opening Br. 21), even in the event that a landlord breaches the Contract, HUD's regulations prescribe that the local agency's "rights and remedies against

the owner under the [C]ontract include recovery of overpayments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the [C]ontract." 24 C.F.R. § 982.453(b). The regulations do not authorize the local agency to conduct the inspection over the landlord's objection. *Id.*

Moreover, the language in the Contract is consistent with other administrative search provisions that do not explicitly provide for precompliance review, but where a right to precompliance review exists. For example, Virginia's Boiler and Pressure Vessel Safety Act provides that "[t]he Commissioner, his agents or special inspectors shall have free access, during reasonable hours to any premises in the Commonwealth where a boiler or pressure vessel is being constructed, operated or maintained." Va. Code § 40.1-51.10 (emphasis added).[7] That statute

---

[7] *See also, e.g.*, Va. Code § 3.2-5102 (Commissioner of Agriculture and Consumer Services "shall have free access at all reasonable hours to any factory, warehouse, or establishment in which foods are manufactured, processed, packed, or held for introduction into commerce, or to enter any vehicle being used to transport or hold such foods in commerce, or any store, restaurant, or other place in which food is being offered for sale"); *id.* § 3.2-5207 (Commissioner of Agriculture and Consumer Services is "empowered, in the performance of his duties, to enter upon and to have free access to any establishment or area subject to the provisions of this article, or the regulations adopted hereunder"); *id.* § 3.2-5208 (State Health Commissioner is "empowered, in the

requires "free access," and it does not expressly reference the opportunity for precompliance review. But under *Camara* and *See*, such inspections in homes and businesses pursuant to the statute clearly allow individuals to insist upon precompliance review before an inspection is conducted. *See*, 387 U.S. at 545; *Camara*, 387 U.S. at 532. Accordingly, this Court should not read a requirement to provide "free access"—whether in the context of a statute or a contract—to prevent the subject from insisting on precompliance review before providing such access.

Cases like *See* and *Camara* do not compel a different result. *See, e.g., Camara*, 387 U.S. at 533 (distinguishing the question of "whether these inspections may be made" from "whether they may be made without a warrant"). In concluding that "administrative entry, without consent, upon the portions of commercial premises which are not open to

---

performance of his duties, to enter upon and to have free access to any establishment or area subject to the provisions of this article, or the regulations adopted hereunder"); *id.* § 6.2-1309 (State Corporation Commission's examiners "shall be given free access to all books, papers, securities, and other sources of information in respect to the credit union"); *id.* § 18.2-340.18 (Department of Agriculture and Consumer Services "shall have free access to the offices, facilities, or any other place of business of any organization, including any premises devoted in whole or in part to the conduct of charitable gaming").

the public may only be compelled through prosecution or physical force within the framework of a warrant procedure," the Court made clear in *See* that it was not "question[ing] such accepted regulatory techniques as licensing programs which require inspections prior to operating a business or marketing a product." *See*, 387 U.S. at 545–46. Rather, it held "only that the basic component of a reasonable search under the Fourth Amendment—that it not be enforced without a suitable warrant procedure—is applicable in this context, as in others, to business as well as to residential premises." *Id.* at 546. Likewise, the Court observed in *Camara* that "the requirement of a warrant procedure does not suggest any change in what seems to be the prevailing local policy, in most situations, of authorizing entry, but not entry by force, to inspect." *Camara*, 387 U.S. at 540. The Contract does just that: authorizes *entry*. Nowhere does it authorize *entry by force*.

Nor can *Patel* carry the load Lucinda places on it. *See, e.g.*, Opening Br. 21–22. Contrary to Lucinda's suggestion, *Patel* was decided not on the mere failure to spell out a precompliance-review scheme within the statute. Indeed, that decision expressly acknowledged that the Supreme Court "has never attempted to prescribe the exact form an opportunity

for precompliance review must take." 576 U.S. at 421. The Court also acknowledged that "claims for facial relief under the Fourth Amendment are unlikely to succeed when there is substantial ambiguity as to what conduct a statute authorizes." *Id.* at 416. In *Patel*, however, the Court concluded that the municipal code provision at issue presented no such ambiguities, because: (1) the parties agreed that "[a] hotel owner who refuse[d] to give an officer access to his or her registry c[ould] be arrested on the spot" under the challenged statute, *id.* at 421; (2) the parties "stipulated that respondents have been subjected to mandatory record inspections under the ordinance without consent or a warrant," *id.* at 413–14; and (3) the city did "not even attempt to argue that [the statute] affords hotel operators any opportunity whatsoever" to obtain precompliance review, *id.* at 421. That is not this case. Unlike in *Patel*, nothing in the source-of-funds provision or the Contract forecloses the availability of precompliance review: they provide no criminal penalty for failing to provide access, and even civilly, they have never been enforced to require an inspection over a landlord's request for precompliance review.

Lucinda has also argued that any precompliance review process

would be "toothless," Opening Br. 22, because it contends that Virginia's source-of-funds provision coerces landlords to consent to inspections without precompliance review, and that this coerced consent would greenlight a search under the Fourth Amendment. Lucinda's argument has changed shape somewhat over the course of this case. In its complaint, Lucinda alleged that this coerced consent would give local agencies "immediate, warrantless access to the premises, equipment, and records of participating Section 8 landlords without pre-compliance review." JA65. Now, on appeal, Lucinda argues that requiring landlords to accept Housing Choice Vouchers "precludes Plaintiffs from giving valid consent to searches authorized by the [Housing Assistance Payments] contracts and the governing Section 8 statute and regulations." Opening Br. 17–18.

Neither argument is right. Because nothing in the Contract requires landlords to forego their right to precompliance review before providing access to their property or records, a landlord does not consent to a warrantless search by executing the Contract. *See supra* at 45–53. Thus, after executing the Contract, the landlord is free to voluntarily consent to a warrantless inspection or to request precompliance review

before providing access. And in any event, when the government has conducted a search that a private party claims was coerced, the private party's consent is not automatically assumed—rather, the government bears the burden of showing that "'consent was, in fact, freely and voluntarily given,'" and was not "the product of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 227 (1973) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)).

Finally, before a landlord could incur sanctions for refusing to accept Housing Choice Vouchers, she would be subject to a formal administrative process—both through the state agency's proceedings, and then if that agency issued a formal charge and the Attorney General decided to pursue further action, through a state court. Those processes provide the landlord with an opportunity for review by a neutral decisionmaker, which is all that the Fourth Amendment requires. *See Benjamin*, 915 F.3d at 1070 (where the ordinance and registration form only triggered consequence to the property owner after "a fair administrative process," they did "not require the waiver of any Fourth Amendment rights, because that administrative process "g[ave] the owner all that the Fourth Amendment asks of the city"); *See*, 387 U.S. at

545.

As currently written and enforced, there is no incompatibility between the Virginia source-of-funds provision, the Contract, and a landlord's Fourth Amendment rights. No relief is warranted.

**C. To the extent the source-of-funds provision is ambiguous about a landlord's ability to obtain review by a neutral decisionmaker before submitting to an inspection, the statute must be interpreted under the canon of constitutional avoidance**

As explained above, the Virginia statute says nothing at all about searches. When faced with, at most, ambiguity about a landlord's ability to obtain review by a neutral decisionmaker before submitting to an inspection or suffering penalties, the canon of constitutional avoidance requires adopting one of the multiple available constructions that are consistent with the Fourth Amendment.

It is "beyond debate" that "'every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.'" *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)). Thus, "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the

statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *DeBartolo*, 485 U.S. at 575. *See also N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979); *Clark v. Martinez*, 543 U.S. 371, 380–81 (2005) ("[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail."). This canon of construction applies to state statutes as well as federal statutes, *see United States v. Vuitch*, 402 U.S. 62, 70 (1971), because as the Virginia Supreme Court has explained, "[w]e attribute to the General Assembly the intent to enact statutes that comply with the Constitution in every respect." *Commonwealth v. Doe*, 682 S.E.2d 906, 908 (Va. 2009) ("[W]hen a statute can be given two different interpretations, one that is within the legislative power and the other without, we are required to adopt the interpretation that conforms to the Constitution.").

Lucinda's approach flips this core understanding of a court's role in statutory interpretation on its head. Based on its speculation about a statute which is silent on the Fourth Amendment, and without any evidence that the statute has ever been enforced as it suggests, Lucinda

"read[s] [the statute] extravagantly, the better to create a constitutional problem." *Fed. Communications Comm. v. Consumers' Rsch.*, 606 U.S. 656, 690 (2025). The Supreme Court has time and again rejected this approach and reaffirmed the principle that "[s]tatutes . . . should be read, if possible, to comport with the Constitution, not to contradict it." *Id.* at 691 (collecting cases). For the reasons described above, *supra* at 43–54, the source-of-funds provision and the Contract are entirely compatible with a landlord's ability to insist upon precompliance review before submitting to an inspection or suffering penalties, and the Court should interpret the statute as such.

Indeed, even if this Court were to accept Lucinda's argument that the combined effect of Virginia's source-of-funds provision and the Contract create an affirmative grant of authority to local agencies to conduct administrative searches without precompliance review (though they do not), this Court could still construe the source-of-funds provision in a constitutional manner. Namely, it could construe the source-of-funds provision to preclude liability for landlords who decline to accept Housing Choice Vouchers based on a legitimate Fourth Amendment objection. *See supra* at 31–32 (explaining that other state courts have determined that

a landlord's refusal to accept Housing Choice Vouchers does not always amount to sanctionable discrimination under source-of-funds provisions, depending on the nature of the landlord's objection). But because Virginia's source-of-funds provision and the Contract do not authorize nonconsensual searches without precompliance review, this Court should not reach the question of whether a landlord who refuses to submit to a nonconsensual search without precompliance review would violate Virginia's source-of-funds provision.

### D. Lucinda has not demonstrated a causal connection between its purported Fourth Amendment concerns and any sanctions that may issue for its refusal to accept Housing Choice Vouchers

Lucinda was unlikely to succeed on the merits of its Fourth Amendment claim for an additional reason: this record does not show any causal connection between the Fourth Amendment objections Lucinda presses in this lawsuit and any possible sanctions it may face in the ongoing state enforcement proceedings. This Court is "not limited to evaluation of the grounds offered by the district court to support its decision, but may affirm on any grounds apparent from the record." *United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005).

Lucinda's Fourth Amendment claim turns on its contention that it

will imminently endure an inspection conducted under the Contract that would violate its Fourth Amendment rights, or it will imminently face sanctions under the source-of-funds provision for refusing to submit to an inspection without precompliance review. Opening Br. 17–18. As discussed above, the Fair Housing Administrator's declaration and the answer Lucinda filed in the state enforcement proceedings confirm that Lucinda has not entered into the Contract or rented to any Housing Choice Voucher holders, so it is not at imminent risk of being subjected to any inspection under the Contract. JA90–95.

Nor does the record appear to support a showing that Lucinda is at imminent risk of being sanctioned for declining to accept Housing Choice Vouchers based on its unwillingness to consent to inspections without an opportunity for precompliance review. When Ms. Wheatley was approached by the Housing Rights Initiative tester, the record shows that she asked no questions of the tester or the local agency about the ability to obtain precompliance review before submitting to inspections associated with the Housing Choice Voucher Program. JA69–70. Instead, Ms. Wheatley responded only that "[t]he owner group does not accept any housing vouchers." JA69–70. The record further demonstrates that the

reasons Lucinda proffered to the state agency for declining to accept Housing Choice Vouchers did not include any objections that the source-of-funds provision would violate its Fourth Amendment rights. JA94–96. And Lucinda has been unable to identify any instance in which a local agency or HUD required a landlord to submit to a nonconsensual inspection without precompliance review, or where Virginia sanctioned a landlord for refusing to submit to such an inspection.

Taken together, the facts in the record demonstrate that no assertion of a Fourth Amendment objection concerning precompliance review caused the tester to complain or the Real Estate Board to initiate enforcement proceedings, no Fourth Amendment objection was presented to the Real Estate Board in the state enforcement proceedings, and no other evidence supports the conclusion that such a Fourth Amendment objection would cause the Real Estate Board to issue sanctions. Thus, the record strongly suggests that any sanctions issued in connection with Lucinda's refusal to accept Housing Choice Vouchers would be untethered from the Fourth Amendment objections Lucinda raises in this lawsuit in federal court. For this reason, too, Lucinda is unlikely to prevail on the merits of its Fourth Amendment claim, and this Court

should affirm the denial of the preliminary injunction.

## CONCLUSION

This Court should affirm.

Respectfully Submitted,

JAY SOM, in his official capacity as Member of the Virginia Fair Housing Board;

KEMPER FUNKHOUSER, in his official capacity as Member of the Virginia Real Estate Board;

CAVELLE MOLLINEAUX, in his official capacity as Member of the Virginia Real Estate Board;

JEREMY DALPIAZ, in his official capacity as Member of the Virginia Real Estate Board;

AEKTA CHAWLA, in her official capacity as Member of the Virginia Real Estate Board;

RENE FONSECA, in his official capacity as Member of the Virginia Real Estate Board;

PIERI BURTON, in his official capacity as Member of the Virginia Real Estate Board;

BERNICE TRAVERS, in her official capacity as Member of the Virginia Real Estate Board;

RAJESH PATEL, in his official capacity as Member of the Virginia Real Estate Board;

KIT HALE, in his official capacity as Member of the Virginia Real Estate Board;

BARRY MOORE, in his official capacity as Member of the Virginia Fair Housing Board;

BRIAN REAGAN, in his official capacity as Member of the Virginia Fair Housing Board;

MORTON MARKS, III, in his official capacity as Member of the Virginia Fair Housing Board;

AMANDA BUYALOS, in her official capacity as Member of the Virginia Fair Housing Board;

ANGELA WEST, in her official capacity as Member of the Virginia Fair Housing Board;

STANLEY REID, in his official capacity as Member of the Virginia Fair Housing Board;

SHION FENTY, in her official capacity as Member of the Virginia Fair Housing Board;

STUART GILCHRIST, in his official capacity as Member of the Virginia Fair Housing Board;

ANGELO PHILLOS, in his official capacity as Member of the Virginia Fair Housing Board;

ANIKA COLEMAN, in her official capacity as Executive Director of both the Virginia Fair

Housing Board and the Virginia Real Estate Board;

STEVEN RIVERA, in his official capacity as Member of the Virginia Fair Housing Board;

JOHN SCOTT, in his official capacity as Member of the Virginia Fair Housing Board; and

JAY JONES, in his official capacity as Attorney General of Virginia.


/s/ *Megan C. Keenan*
MEGAN C. KEENAN
  *Deputy Solicitor General*

| | |
|---|---|
| JAY JONES<br>  *Attorney General* | TILLMAN J. BRECKENRIDGE<br>  *Solicitor General* |
| TRAVIS G. HILL<br>  *Chief Deputy Attorney General* | MEGAN C. KEENAN<br>  *Deputy Solicitor General* |
| GRETCHEN E. NYGAARD<br>  *Deputy Attorney General* | MIKAELA A. PHILLIPS<br>  *Assistant Solicitor General* |

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-1252 – Telephone
(804) 786-1991 – Facsimile
SolicitorGeneral@oag.state.va.us

July 15, 2026

*Counsel for Defendants-Appellees*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), I certify that this Brief of Appellees is proportionately spaced and contains 11,141 words excluding parts of the document exempted by Rule 32(f).

/s/ *Megan C. Keenan*
MEGAN C. KEENAN
*Deputy Solicitor General*

**CERTIFICATE OF SERVICE**

I certify that on July 15, 2026, the Brief of Appellees was served

on all parties or their counsel of record through the CM/ECF system.


/s/ *Megan C. Keenan*
MEGAN C. KEENAN
*Deputy Solicitor General*