# NO. 26-1442

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

LUCINDA LC, on behalf of themselves and all others similarly situated;
JUNE WHEATLEY,

*Plaintiffs-Appellants*,

v.

JAY SOM, in his official capacity as Member of the Virginia Fair Housing Board; KEMPER FUNKHOUSER, in his official capacity as Member of the Virginia Real Estate Board; CAVELLE MOLLINEAUX, in his official capacity as Member of the Virginia Real Estate Board; JEREMY DALPIAZ, in his official capacity as Member of the Virginia Real Estate Board; AEKTA CHAWLA, in her official capacity as Member of the Virginia Real Estate Board; RENE FONSECA, in his official capacity as Member of the Virginia Real Estate Board; PIERI BURTON; in his official capacity as Member of the Virginia Real Estate Board; BERNICE TRAVERS, in her official capacity as Member of the Virginia Real Estate Board; RAJESH PATEL, in his official capacity as Member of the Virginia Real Estate Board; KIT HALE, in his official capacity as Member of the Virginia Real Estate Board; BARRY MOORE, in his official capacity as Member of the Virginia Fair Housing Board; BRIAN REAGAN, in his official capacity as Member of the Virginia Fair Housing Board; MORTON MARKS III, in his official capacity as Member of the Virginia Fair Housing Board; AMANDA BUYALOS, in her official capacity as Member of the Virginia Fair Housing Board; ANGELA WEST, in her official capacity as Member of the Virginia Fair Housing Board; STANLEY REID, in his official capacity as Member of the Virginia Fair Housing Board; SHION FENTY, in her official capacity as Member of the Virginia Fair Housing Board; STUART GILCHRIST, in his

official capacity as Member of the Virginia Fair Housing Board; ANGELO PHILLOS, in his official capacity as Member of the Virginia Fair Housing Board; ANIKA COLEMAN, in her official capacity as Executive Director of both the Virginia Fair Housing Board (VFHB) and the Virginia Real Estate Board (VREB); STEVEN RIVERA, in his official capacity as Member of the Virginia Fair Housing Board; JOHN SCOTT in his official capacity as Member of the Virginia Fair Housing Board; JAY JONES, in his official capacity as Attorney General of Virginia.

*Defendants-Appellees.*

---

On appeal from the United States District Court for the Eastern District of Virginia at Alexandria. Michael S. Nachmanoff, District Judge. (1:26-cv-252-MSN)

---

# Reply Brief of Lucinda LC and June Wheatley

---

Adam E. Schulman
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (610) 457-0856
Email: adam.schulman@hlli.org

*Attorneys for Plaintiffs-Appellants*

# Table of Contents

Table of Contents ..............................................................................................i

Table of Authorities .........................................................................................ii

Argument ...........................................................................................................1

I.    Virginia's "source-of-funds" nondiscrimination provision coerces
landlords into unconstitutional searches.....................................................2

    A.    The regulatory scheme provides no concrete opportunity for
precompliance review.........................................................................2

    B.    Under *Patel*, Plaintiffs appropriately bring a facial challenge
to the source-of-funds provision........................................................7

    C.    No reasonable narrowing construction of the law can avoid the
constitutional infirmity....................................................................10

II.    Lucinda and Wheatley suffer a justiciable injury.....................................13

III.    Neither *Pullman* nor *Younger* abstention applies. ................................16

    A.    *Pullman* does not apply...................................................................16

    B.    *Younger* does not apply. .................................................................18

Conclusion .......................................................................................................23

Combined Certifications of Compliance ..........................................................25

Certificate of Service .......................................................................................26

# Table of Authorities

## Cases

*216 East 29th St. Tr. v. City of New York*, 2025 WL 315380, 2025 U.S. Dist. LEXIS 15267, (S.D.N.Y. Jan. 28, 2025), *aff'd* 2025 WL 3264312, 2025 U.S. App. LEXIS 30697 (2nd. Cir. Nov. 24, 2025) .... 8, 21

*303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) .................................................................................. 6

*ACLU v. Bozardt*, 539 F.2d 340 (4th Cir. 1976) ..................................................................... 22

*Baird v. State Bar of Ariz.*, 401 U.S. 1 (1971) ....................................................................................... 8

*Benjamin v. Stemple*, 915 F.3d 1066 (6th Cir. 2019) ............................................................... 4

*Birchfield v. North Dakota*, 579 U.S. 438 (2016) ................................................................................ 7

*Boykin v. Ala.*, 395 U.S. 238 (1969) ................................................................................ 9

*Burrell v. Shirley*, 142 F.4th 239 (4th Cir. 2025) ...................................................................... 16

*Caleb Stowe Assocs. v. Albermarle Cty.*, 724 F.2d 1079 (4th Cir. 1984) ..................................................................... 16

*City of Los Angeles v. Patel*, 576 U.S. 409 (2015) .......................................................................... *passim*

*Columbia Basin Apartment Ass'n v. City of Pasco,*
    268 F.3d 791 (9th Cir. 2001) ...................................................... 6

*Commonwealth v. Doe,*
    682 S.E.2d 906 (Va. 2009) ...................................................... 10

*Doe v. Reed,*
    561 U.S. 186 (2010) ...................................................... 7, 8, 10

*Educ. Servs., Inc. v. Maryland State Bd. for Higher Educ.,*
    710 F.2d 170 (4th Cir. 1983) ...................................................... 18

*Epic Sys. Corp. v. Lewis,*
    584 U.S. 497 (2018) ...................................................... 20

*Feemster v. BSA Ltd. P'ship,*
    548 F.3d 1063 (D.C. Cir. 2008) ...................................................... 18

*Hamer v. Neighborhood Hous. Servs.,*
    583 U.S. 17 (2017) ...................................................... 16, 17

*Haw. Hous. Auth. v. Midkiff,*
    467 U.S. 229 (1984) ...................................................... 14, 15, 18, 21, 22

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
    586 U.S. 63 (2019) ...................................................... 12

*Hicks v. Miranda,*
    422 U.S. 332 (1975) ...................................................... 14

*Jennings v. Rodriguez,*
    583 U.S. 281 (2018) ...................................................... 10

*Jonathan R. v. Justice,*
    41 F.4th 316 (4th Cir. 2022) ...................................................... 19

*Jones v. City of Kansas City*,
No. 4:24-cv-00649-RK, 2025 WL 4236642, 2025 U.S. Dist. LEXIS 121974 (W.D. Mo. Feb. 11, 2025) ............................................................ 1, 6

*K & R Contractors, LLC v. Keene*,
86 F.4th 135 (4th Cir. 2023) ................................................................ 16

*Lakewood v. Plain Dealer Pub. Co.*,
486 U.S. 750 (1988) ............................................................................ 11

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ............................................................................ 22

*Loving v. Virginia*,
388 U.S. 1 (1967) ................................................................................... 7

*Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*,
507 U.S. 163 (1993) ............................................................................ 12

*Marshall v. Jerrico, Inc.*
446 U.S. 238 (1980) ............................................................................ 20

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*,
457 U.S. 423 (1982) ............................................................................ 22

*Moody v. NetChoice*,
603 U.S. 707 (2024) ............................................................................... 7

*Montgomery Cty. v. Glenmont Hills Assocs.*,
936 A.2d 325 (2007) ..................................................................... 25, 26

*Nievens v. Gilchrist*,
444 F.3d 237 (4th Cir. 2006) ............................................................. 17

*Ohio Civil Rights Comm'n v. Dayton Christian Schools,*
 477 U.S. 619 (1986) .................................................................. 22

*People v. Commons West, LLC,*
 80 Misc. 3d 447 (N.Y. Sup. Ct. 2023) ......................................... 1

*People v. Commons West, LLC,*
 85 Misc. 3d 1055 (N.Y. Sup. Ct. 2024) ....................................... 7

*People v. Commons West, LLC,*
 2026 WL 616282, 2026 NY App. Div. LEXIS 1351 (N.Y. App. Div.
 3rd Dept. Mar. 5, 2026) ......................................................... 1, 12

*Robert A. Johnston Co. v. Southland Dairy Distrib. Co.,*
 368 F.2d 993 (4th Cir. 1966) ..................................................... 21

*San Remo Hotel, L.P. v. City & Cty. of San Francisco,*
 545 U.S. 323 (2005) .................................................................. 17

*Smelt v. Orange Cty.,*
 447 F.3d 673 (9th Cir. 2006) ..................................................... 16

*Sonda v. W. Va. Oil & Gas Conservation Comm'n,*
 92 F.4th 213 (4th Cir. 2024) ...................................................... 17

*Sprint Commc'ns, Inc. v. Jacobs,*
 571 U.S. 69 (2013) .......................................................... *passim*

*Susan B. Anthony List v. Driehaus,*
 573 U.S. 149 (2014) ............................................................ 13, 14

*Telco Commc'ns, Inc. v. Carbaugh,*
 885 F.2d 1225 (4th Cir. 1989) ................15, 16, 18, 19, 20, 21, 22

*TRW Inc. v. Andrews,*
    534 U.S. 19 (2001) ................................................................. 12

*United States v. Bank,*
    965 F.3d 287 (4th Cir. 2020) ............................................... 9

*United States v. Simms,*
    914 F.3d 229 (4th Cir. 2019) ....................................... 11, 12

*Warger v. Shauers,*
    574 U.S. 40 (2014) ................................................................. 10

*Waters v. Churchill,*
    511 U.S. 661 (1994) ....................................................... 21, 22

*W. Va. Parents for Religious Freedom v. Christiansen,*
    124 F.4th 304 (4th Cir. 2024) ............................................. 17

*Wisconsin v. Constantineau,*
    400 U.S. 433 (1971) ............................................................. 17

*Younger v. Harris,*
    401 U.S. 37 (1971) ...................................................... *passim*

*Zwickler v. Koota,*
    389 U.S. 241 (1967) ....................................................... 17, 18

Constitutional Provisions

U.S. CONST., AMEND. 1 ................................................................. 8

U.S. CONST., AMEND. 4 ........................................................ *passim*

Rules and Statutes

Va. Code §§ 36-96.1:1 ................................................................. 11

Va. Code §§ 36-96.2 ....................................................................... 11

Va. Code §§ 36-96.3 ................................................................. *passim*

Other Authorities

Antonin Scalia & Bryan A. Garner,
      READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012)........... 12

Va. Real Estate Bd.,
      GUIDANCE DOCUMENT: HOUSING DISCRIMINATION ON THE BASIS
      OF SOURCE OF FUNDS ........................................................... 11–12

**Argument**

Lucinda's opening brief maps the erroneous turns taken by the district court in denying Lucinda and Wheatley preliminary injunctive relief.[1] To a large degree, Defendants' response brief does not engage. Rather than explain why one should discard the analysis of every court to consider comparable Fourth Amendment claims, Defendants simply ignore those decisions. *See Jones v. City of Kansas City,* No. 4:24-cv-00649-RK, 2025 WL 4236642 (W.D. Mo. Feb. 11, 2025); *People v. Commons West, LLC,* 2026 WL 616282 (N.Y App. Div. 3rd Dept. Mar. 5, 2026); *People v. Commons West, LLC*, 80 Misc. 3d 447, 452 (N.Y. Sup. Ct. 2023). These decisions undercut the government's narrative that Wheatley and her family have "devised a theory" so that they may "discriminate against indigent people." DB1. The record already disproves that narrative anyway. Plaintiffs willingly accept other government rent subsidies; they object only to this subsidy's compelled waiver of constitutional rights. JA70–71.

Facing the reality of a regulatory scheme that coerces mom-and-pop landlords like Lucinda into waiving constitutional rights through tester-generated complaints, Defendants look for an offramp. They simultaneously

---

[1] "JA" refers to the Joint Appendix, and "Dkt." to the docket below, No. 26-cv-252 (E.D. Va.). "OB" indicates Lucinda's opening brief, and "DB" indicates Defendants' response brief.

argue that Lucinda has sued too early (standing, ripeness, *Pullman*), and too late (*Younger*). They detour in search of ambiguity and contingency in the operation of the law, but the conflict between the Constitution and Virginia's source-of-funds law arises from the text of the statutes and the plain terms of the uniform mandatory Housing Assistance Payment (HAP) contract.

The successful facial challenge in *City of Los Angeles v. Patel* itself forecloses the central premise of Defendants' arguments. 576 U.S. 409 (2015). Defendants never identify one sentence—in any statute, regulation, or HAP provision—that supplies *Patel* precompliance review. Relying on *Patel*, every other court to consider the issue agrees with Lucinda: state housing laws that compel participation in Section 8 violate the Fourth Amendment (as incorporated through the Fourteenth). This Court should follow suit.

I. **Virginia's "source-of-funds" nondiscrimination provision coerces landlords into unconstitutional searches.**

A. **The regulatory scheme provides no concrete opportunity for precompliance review.**

Despite the serious disagreement between the parties, Defendants do agree with Lucinda on several important things. First, they agree that the HAP contract and Section 8 program authorize, indeed require, searches of the landlord's property. DB5–6. Second, they acknowledge that, under *Patel*, a regulatory regime authorizing administrative searches must afford the subject of that search an opportunity for precompliance review by a neutral

decisionmaker. DB6–7. Third, they concede that nothing in the Section 8 enabling statute, regulations, the HAP contract, or Virginia's source-of-funds law affirmatively provides for a precompliance review process. *Cf.* DB18 (arguing that nothing "prohibits a landlord from insisting on [it]"); *accord* DB45, DB51 (both similar).[2] Finally, they admit that a property owner's consent can only justify a search if that consent is "freely and voluntarily given" and not "the product of duress or coercion, express or implied." DB53 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)).

Together, these concessions amount to a Fourth Amendment violation under *Patel*. OB17–23. Defendants repeatedly assert that nothing in the statute, contract, or regulations is incompatible with a landlord insisting on precompliance review and a conscientious government officer allowing it. That is inaccurate; the HAP contract authorizes inspection "*at such times as the PHA determines necessary*, to ensure that the unit is in accordance with the HQS [housing quality standards]." HUD Form 52641, Part B, ¶ 3(e). So, the contract actually excludes the possibility of precompliance review by authorizing search exactly when the government demands it.

More fundamentally, Defendants' argument, if accepted, would turn the *Patel* inquiry on its head. *Patel*'s holding is unmistakable: when authorizing an

---

[2] Nor do they allege that some other particular mechanism of Virginia law allows such precompliance review before the search or penalty process for refusal.

administrative search, a statute must do more than not preclude precompliance review; it must affirmatively provide it. OB16–17 (quoting *Patel*).

While *Patel* doesn't prescribe the exact form precompliance review must take, it does prescribe that there be *a* form. Virginia identifies no statutory or contractual language capable of being construed to create warrants, administrative subpoenas, neutral hearing rights, or judicial review, before requiring compliance with the search. They make no "attempt to argue" that the statute and HAP contract "afford" precompliance review, only that neither "forecloses" it. DB51. Patel asks, "Does the legal scheme itself provide precompliance review?"; not, "Could an official someday voluntarily invent one?"

*Benjamin v. Stemple*, 915 F.3d 1066 (6th Cir. 2019), is instructive, but not for the reason Defendants claim. They claim that *Benjamin* conducted its *Patel* review by "look[ing] at how the ordinance and the registration form had been 'implemented by the city.'" DB44. Not so. *Benjamin* upheld the city ordinance because Saginaw's administrative scheme explicitly provided the specific opportunity for precompliance review required by *Patel*. "The ordinance clarifies that an inspector's dangerousness finding is preliminary and triggers a hearing on the point…Because the registration form requires the property owner to allow entrance to his property only after a fair administrative process determines the building is dangerous, it does not require the waiver of any Fourth Amendment rights." 915 F.3d at 1070. Again, Defendants point to

nothing remotely similar in the Fair Housing Act, the HAP contract, or the HUD regulations.

Defendants gesture at the process that landlords would get during the proceeding imposing sanctions for refusal to accept a Section 8 search. DB53. But valid precompliance review of an administrative search cannot be the process that occurs when a penalty is being enforced. Otherwise, *Patel* would have reversed because hotel owners could challenge the search during their criminal misdemeanor proceeding.

And Defendants point to unrelated DoD and DoT regulations memorializing implied consent of drivers to blood alcohol testing, reasoning that if HUD wanted to signal that landlords were consenting to a search it would have used similar language in the HAP contract. DB47. This doesn't withstand scrutiny. HUD has no reason to invoke the language of implied consent; they are obtaining express consent from the terms of the HAP contract. As for the mandatory inspection that occurs before a landlord enters a HAP contract (DB35), that too is coerced, not by the contract but by the source-of-funds law itself.

At bottom though, Defendants' primary enterprise of imagining hypothetical scenarios in which a particular search might comport with the Fourth Amendment is misguided. *Patel* explicitly rejects that methodology. "[T]he proper focus of the constitutional inquiry is searches that the law

actually authorizes, not those for which it is irrelevant." 576 U.S. at 418. Lucinda discussed this (OB30), Defendants do not address it.

*Patel* draws no line between "authorizing entry" and "authorizing entry by force." *Contra* DB51. Los Angeles's ordinance didn't authorize "entry by force"; it authorized entry, and backed that authority by penalty if the property owner refused to comply. 576 U.S. at 413. That is how Section 8 and Virginia's law together operate. OB17, 21.[3]

Finally, Defendants need not worry (DB48–49) that other state regulatory schemes that authorize comparable administrative searches, are incompatible with the Fourth Amendment. Broiler valve safety and food manufacturing are quintessential examples of closely regulated industries that do not require precompliance review. Defendants do not argue that rental housing falls within that class. For good reason. *See Patel*, 576 U.S. at 424–25 (reading the closely regulated industry exception narrowly); *Jones*, 2025 WL 4236642, at *7–*8 (finding "no caselaw…that extends [the closely regulated] exception to the rental housing industry").

It's no constitutional defense that "many states" have the same or similar type laws. *303 Creative LLC v. Elenis*, 600 U.S. 570, 577 (2023); *see also*

---

[3] Defendants note the lack of criminal penalties for refusing a Section 8 search. DB51. It makes no difference that Lucinda faces civil, rather than criminal, penalties. *See Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 798 (9th Cir. 2001); *Jones*, 2025 WL 4236642, at *5 n.8 (citing cases supporting the proposition that criminal and civil penalties alike may coerce consent).

*Birchfield v. North Dakota*, 579 U.S. 438, 448 (2016) (sustaining Fourth Amendment challenge even though twelve states and the federal government had similar laws, as cataloged in Brief for the United States as Amicus Curiae, No. 14-1468 (Mar. 22, 2016)); *Loving v. Virginia*, 388 U.S. 1, 6 (1967) (16 states). "The means of achieving any policy goal through law, no matter how laudable, must comply with the Constitution." *People* v. *Commons West*, 85 Misc. 3d 1055, 1063 (N.Y. Sup. Ct. 2024). Because VFHL's source-of-funds provision exceeds constitutional bounds when it comes to Section 8 vouchers, Lucinda demonstrated a likelihood of success on Fourth Amendment claims, and the court should have entered a preliminary injunction.

### B.  Under *Patel*, Plaintiffs appropriately bring a facial challenge to the source-of-funds provision.

*Patel* provides the framework for Fourth Amendment facial challenges; and *Doe v. Reed*, 561 U.S. 186 (2010), addresses challenges that reach beyond the particular circumstances of the plaintiff but do not extend to every application of the law. OB29–30. Defendants address neither case.

Meanwhile, Defendants' *amici* misapprehend the limited scope of the injunction Lucinda requests. Lucinda has not requested that Virginia's source-of-funds law be restrained in every application. Dkts. 24, 31; *contra* Br. of *Amici Curiae* Poverty & Race Research Action Council, *et al.* 19 n.4. Because of that scope, the "unconstitutional in all applications" standard (DB39) is misplaced here. OB29. *Moody v. NetChoice* nowhere suggests that a litigant is

forbidden from bringing facial challenges that cover less than all applications of a statute. *Contra* DB40. It doesn't claim to overrule *Doe v. Reed.*

Lucinda's Fourth Amendment challenge is no less viable because the unconstitutional compulsion derives from the incorporated terms of the Section 8 scheme. OB19 (discussing permitting cases); *contra* DB40. This does not depend on case-by-case "facts about the plaintiff." DB41 (quoting *216 E. St. Tr. v. City of New York*, 2025 U.S. Dist. LEXIS 15267, 2025 WL 315380, *8 (S.D.N.Y. Jan. 28, 2025)). The HAP contract is uniform and mandatory in all cases.

Defendants hypothesize that there are permissible applications even within the universe of applications arising out of the non-acceptance of Section 8 vouchers. DB41. But the example they provide is not a permissible application at all. The reason that a landlord objects to a search, and the fact of whether or not they would independently consent to that search, say nothing about the legality of a statute compelling that waiver of constitutional rights under threat of penalty. Imagine a municipality that passes an ordinance compelling its residents to put up "Make America Great Again" signs in their front yards. All property owners subject to the law could assert First Amendment claims regardless of whether they agree with the message and would have put up a sign voluntarily. They are all subject to the unconstitutional compulsion. *Cf. Baird v. State Bar of Ariz.*, 401 U.S. 1, 4–5 (1971) (petitioner, a former choir girl and girl scout, stated valid First

Amendment claim that state bar could not compel her to disclose Communist Party membership on examination for admission).

Constitutional rights exist independently of the holder's subjective desire to exercise them. A right may be relinquished only through a constitutionally sufficient waiver. Courts therefore "'indulge every reasonable presumption against waiver of fundamental constitutional rights,' rather than 'presume acquiescence in the loss' of such rights." *United States v. Bank*, 965 F.3d 287, 293 (4th Cir. 2020) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). They refuse to presume waiver from silence or hypothetical willingness to consent. *Boykin v. Ala.*, 395 U.S. 238, 243 (1969).

Similarly, because rights exist objectively and independently, Defendants go astray in suggesting that the Fourth Amendment claim depends on the reason that the landlord objects and the reason given that "cause[d] the tester to complain." DB59. In their effort to tar Wheatley and Lucinda, Defendants complain that Wheatley never raised her Fourth Amendment concerns when approached by the tester, and that Plaintiffs' voluntary attorney-written response to the Board did not mention that issue. Defendants do not explain why they think that is relevant, nor do they cite a single case suggesting it is (*see* DB57–59). Even if it were relevant, Plaintiffs aver exactly that motive in their verified complaint. JA66 (Plaintiffs "have eschewed renting to Section 8 tenants because of the loss of rights associated with the Arlington PHA's Housing Choice Vouchers (HCV) and HUD's required HAP contracts");

JA67 ("Plaintiffs now face a State investigation, potential monetary damages, potential professional discipline, potential injunctive relief forcing them to accept Section 8 vouchers and the forced waiver of Fourth Amendment rights…Therefore, to protect their own rights and similarly situated landlords in Arlington and Virginia, Plaintiffs bring this class action lawsuit."); JA71 (Plaintiffs "do not want to sign a HAP contract with the Arlington PHA that would require them to waive their Fourth Amendment and VRLTA rights").

Plaintiffs bring an appropriate facial challenge under *Patel* and *Doe*.

**C.    No reasonable narrowing construction of the law can avoid the constitutional infirmity.**

Defendants' last refuge on the merits is the canon of constitutional avoidance. DB54–57. That canon, however, "comes into play only when after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (internal quotation omitted). "It has no application in the absence of … ambiguity." *Warger v. Shauers*, 574 U.S. 40, 50 (2014) (internal quotation omitted); *see also Commonwealth v. Doe*, 682 S.E.2d 906, 908 (Va. 2009) (canon applies "when a statute can be given two different interpretations").

Because the plain meaning of the operative source-of-funds provision is unambiguous, applying the canon of constitutional avoidance would be improper. "[R]ewrit[ing] a law to conform it to constitutional requirements …

would constitute a serious invasion of the legislative domain." *United States v. Simms*, 914 F.3d 229, 251 (4th Cir. 2019) (quoting *United States v. Stevens*, 559 U.S. 460, 481 (2010)). That includes "writ[ing] nonbinding limits into a silent state statute." *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 770 (1988). The VFHL makes it illegal to refuse to sell, rent, negotiate the sale or rental, or otherwise make unavailable a dwelling because of "source of funds." Va. Code §36-96.3(A)(1)-(7). "Source of funds" is defined as "any source that lawfully provides funds to or on behalf of a renter or buyer of housing, including any assistance, benefit, or subsidy program, whether such program is administered by a governmental or nongovernmental entity." Va. Code §36-96.1:1. This captures Section 8 vouchers; indeed, it was in Defendants' own words, "the primary impetus for the bill." VA. REAL ESTATE BD., GUIDANCE DOCUMENT: HOUSING DISCRIMINATION ON THE BASIS OF SOURCE OF FUNDS 2 (2021). Therefore, as a matter of text and purpose, the source-of-funds provision mandates that landlords accept Section 8 vouchers and the warrantless searches inherent in the Section 8 program.

What Defendants seek is an interpretation that would allow landlords to discriminate based on source-of-funds if they do so because of one particular aspect of Section 8's scheme—its Fourth Amendment waivers. DB32, DB56. Other exceptions exist. *E.g.*, Va. Code § 36-96.2 (C) (recognizing a RFRA type exemption for religious organizations to discriminate on the basis of religion).

With the source-of-funds provision's addition, the Virginia legislation introduced two more specific exemptions. § 36-96.2 (I), (J).

But the exception Defendants propose here simply does not exist. This isn't reading the statute "extravagantly." *Contra* DB56. It's giving it the ordinary reading that other courts have repeatedly done in similar contexts. OB23–27. And it follows from the "negative implication canon," under which "the expression of one thing implies the exclusion of others (*expresio unius est exclusio alterius*)." Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (2012)). "[A] matter not covered is to be treated as not covered." *Id.* at 93. This canon applies to statutory and rule-based exceptions. *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001); *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). Indeed, even Defendants' *amici* seem to agree that there's no such exception. *See* Poverty & Race RAC Br. at 12 n.2. Defendants don't cite a single case from any court, state or federal, holding otherwise.

Courts may not "engraft [their] own exceptions onto the statutory text." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 70 (2019). Because "judges cannot revise invalid statutes," the Court should decline to adopt the Defendants' proposed revision. *Simms*, 914 F.3d at 251; *see also Commons West*, 2026 WL 616282, at *6 (declining to adopt "an interpretation of the contract that would directly run counter to its express terms.").

The plain text of the source-of-funds law precludes the interpretation Defendants offer.

## II. Lucinda and Wheatley suffer a justiciable injury.

Plaintiffs suffered a concrete injury when VFHL's source-of-funds provision put them to the dilemma of either waiving their constitutional rights by accepting Section 8 vouchers or violating state law. OB13, OB31–33. In this case, that injury ripened no later than when the Housing Rights Initiative's tester approached Wheatley and asked whether she accepted Section 8 vouchers. In Defendants' world though, Lucinda's "federal constitutional claims are perpetually too early or too late for federal adjudication." Br. of *Amici Curiae* Liberty Justice Center and Manhattan Inst. at 13. "This is precisely the kind of structural injustice that pre-enforcement review doctrine was designed to prevent." *Id.*

Defendants maintain that Plaintiffs' claims depend on a "series of premises" and "a chain of hypotheticals and contingencies." DB34–35, DB38. One could invent the same chain of contingencies in any case raising a preenforcement constitutional challenge to enforcement of a state law. But it is quite ironic that Defendants do so here where Lucinda and Wheatley already face a private complaint with the Board, crystalizing the constitutional harm. *See S.B.A. List v. Driehaus*, 573 U.S. 149, 164 (2014) (that plaintiff was subject of complaint in recent election cycle "is good evidence that the threat of

enforcement is not 'chimerical.'"). That the "tester" did not seek to actually make a request for tenancy approval is immaterial. Plaintiffs face a credible threat of enforcement and severe penalties for even saying that they will not accept Section 8 vouchers. The constitutional injury arises from that present coercion, not merely from a future inspection or enforcement action.

Moreover, while the complaint was pending, Defendants had a prime opportunity to disavow enforcement that is in conflict with the Constitution. They did not, thus bolstering the threat further. 573 U.S. at 165. Indeed, on July 16, 2026, shortly after Defendants filed their response brief, the Real Estate Board issued a finding of probable cause, and announced that it would shortly issue a charge and referral to the Attorney General.[4] Because this finding of probable cause and initiation of enforcement proceedings came months after the district court's preliminary injunction opinion, it is not relevant to the pending *Younger* analysis that is discussed in the following section. *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 238 (1984). Following *Hicks v. Miranda*, 422 U.S. 332, 349 (1975), *Midkiff* holds that the *Younger* only applies when "state-court proceedings are initiated before any proceedings of substance on the merits have taken place in federal court. 467

---

[4] Although not in the record on appeal, this Court may take judicial notice of state administrative filings and decisions. Lucinda will so move if the Court requests it.

U.S. at 238. A decision on a preliminary injunction motion "certainly" counts as a proceeding of substance. *Id.*

For Wheatley, an active member of the Northern Virginia realtor community who prides herself on her impeccable reputation, even the administrative process of conciliation and investigation has felt punitive. JA64. For small, mom-and-pop landlords, the process is very much the punishment. *See* Liberty Justice Center Br. 8–12.

There's an uncomfortable tension between Defendant's simultaneous arguments that (1) enforcement is so far advanced that the district court must abstain under *Younger* and (2) so contingent on future events that the constitutional question is not fit for judicial resolution. Defendants would eliminate the "daylight" that must exist "between ripeness and *Younger* abstention—a window during which federal plaintiffs can seek pre-enforcement review." Liberty Justice Center Br. 14 (citing *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1229 (4th Cir. 1989)).

Defendants analogize VFHL's source-of-funds provision to the one provision deemed unripe in *Telco*. But that provision was entirely different. OB35. It allowed a suspension or revocation of license for a variety of unspecified infractions. "While some grounds for suspension or revocation may be permissible, others may not. Uneven enforcement of sanctions for trivial reasons might implicate First Amendment concerns; sanctions for gross fraud would not." 885 F.2d at 1234–35. But here, Lucinda is not challenging every

possible application of the source-of-funds non-discrimination law, only those that require an accompanying waiver of constitutional rights. OB29. Thus, there is no analogy to the one provision found unripe for challenge in *Telco*.

Plaintiffs have standing to bring their ripe as-applied and facial claims.

## III. Neither *Pullman* nor *Younger* abstention applies.

### A. *Pullman* does not apply.

For the first time on appeal, Virginia raises *Pullman* abstention as a defense to this litigation. DB30–33. They have not preserved the issue for review. Non-jurisdictional defenses can be "waived or forfeited" by failure to raise them. *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 145 (4th Cir. 2023) (internal quotation omitted). Most abstention defenses, including *Pullman*, fit this bill. *Burrell v. Shirley*, 142 F.4th 239, 249 (4th Cir. 2025) (*Younger*); *Smelt v. Orange Cty.*, 447 F.3d 673, 679 (9th Cir. 2006) (*Pullman*). Defendants rely (DB 30 n.6) on *Caleb Stowe*, but that decision has been superseded by the Supreme Court's repeated instruction to not treat waivable defenses as "jurisdictional." *Compare Caleb Stowe Assocs. v. Albemarle Cty.*, 724 F.2d 1079, 1080 (4th Cir. 1984), *with Fort Bend Cty. v. Davis*, 587 U.S. 541, 548 (2019). *Pullman* abstention, like other "mandatory claim-processing rules" is "less stern" than a jurisdictional rule. *Hamer v. Neighborhood Hous. Servs.*,

16

583 U.S. 17, 20 (2017). "If properly invoked, mandatory claim-processing rules must be enforced, but they may be waived or forfeited." *Id.*[5]

Like *Younger* abstention, *Pullman* constitutes an "extraordinary and narrow exception[] to a federal court's duty to exercise the jurisdiction conferred on it." *W. Va. Parents for Religious Freedom v. Christiansen*, 124 F.4th 304, 309 (4th Cir. 2024); *accord Sonda v. W. Va. Oil & Gas Conservation Comm'n*, 92 F.4th 213, 219 (4th Cir. 2024). Courts are "particular reluctant to abstain in cases involving facial [constitutional] challenges." *W. Va. Parents*, 124 F.4th at 310 (internal quotation omitted; referring specifically to First Amendment challenges).

For the same reasons that the VFHL's source-of-funds law does not permit a narrowing construction,[6] it lacks the ambiguity necessary for *Pullman* abstention. "Where there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim." *Wisconsin v. Constantineau,* 400 U.S. 433, 439 (1971); *accord W. Va. Parents*, 124 F.4th at 309. That principle applies doubly so where the inevitable result of abstention would be to give the state court an opportunity to adjudicate an identical issue. *See San Remo Hotel, L.P. v. City & Cty. of San Francisco*, 545 U.S. 323, 339 (2005); *Zwickler v. Koota*, 389 U.S.

---

[5] One further indication that *Pullman* abstention is non-jurisdictional is that it results in a stay of the federal action, not a dismissal. *Nivens v. Gilchrist*, 444 F.3d 237, 245 (4th Cir. 2006).

[6] *See* Section I.C, *supra*.

241, 251 (1967) (rejecting abstention aimed at giving "state courts the first opportunity to vindicate the federal claim"); *contrast* DB53 (arguing that the state administrative and state court process is the proper venue for adjudication of the landlord's Fourth Amendment claim). This puts the present case beyond the "relatively rare instances" that call for abstention, a point amplified by the failure to raise the issue in the district court. *Educ. Servs., Inc. v. Maryland State Bd. for Higher Educ.*, 710 F.2d 170, 174 (4th Cir. 1983).

Defendants cite (DB32) three cases to inject ambiguity into the VFHL, but they fail to muddy the water, and Lucinda has already addressed two of the three. OB23–26. The third, *Feemster*, declined to abstain despite the District of Columbia Court of Appeals not yet "outlin[ing] the boundaries of source-of-income discrimination under the Human Rights Act." *Feemster v. BSA Ltd. P'ship*, 548 F.3d 1063, 1070 (D.C. Cir. 2008). It held that Section 8 voucher denial was "the source-of-income provision's paradigm case." *Id.* "Permitting [a landlord] to refuse to accept Section 8 vouchers on the ground that it does not wish to comply with Section 8's requirements would vitiate that definition." *Id.* at 1071. *Feemster* supports Lucinda's reading of the VFHL.

Thus, this Court should not abstain under *Pullman*.

### B. *Younger* does not apply.

Lucinda, in its opening brief, explains how the district court's decision to abstain under *Younger* cannot be reconciled with *Sprint, Midkiff, Telco,*

*Jonathan R.*, and a wide consensus of appellate case law. OB38–44; OB46–49. Defendants only even attempt to address *Sprint* and *Telco*.

*Sprint Commc'ns, Inc. v. Jacobs* held that an Iowa Utility Board Proceeding did not warrant abstention because, *inter alia*, it was initiated by a private corporation and no state actor lodged a formal complaint against Sprint. 571 U.S. 69, 80 (2013). It held that the lower abstaining court had erred by allowing the importance of the state interests and the adequate opportunity to raise federal challenges to outweigh the categorical question of whether the state proceeding was akin to a criminal prosecution. *Id.* at 81–82. This Court has since interpreted *Sprint*'s quasi-criminal civil enforcement proceeding category to comprise "cases 'brought by the State in its Sovereign capacity' following an 'investigation' and upon 'the filing of a formal complaint or charges.'" *Jonathan R. v. Justice*, 41 F.4th 316, 329 (4th Cir. 2022) (citing *Sprint*, 571 U.S. at 79–80). These are "exceptional circumstances." *Id.* Ignoring *Jonathan R* and similar appellate precedent (OB41–42), Defendants home in on the *Sprint* language that the state is "routinely" a party and "often" initiates the action. DB24. In other words, Defendants seek to expand an already narrow exception by relaxing the very criteria that make it exceptional. It is also not fair to say that Virginia agencies routinely are a party to or initiate the kind of proceedings that were occurring when Lucinda filed in federal court. Again, in conciliation proceedings, "the Commonwealth 'is a neutral participant.'" OB43 (quoting Va. Dept. of Prof. & Occupational Reg., VIRGINIA REAL ESTATE

BOARD AND VIRGINIA FAIR HOUSING BOARD FACT SHEET, https://www.dpor.virginia.gov/10conciliation).

Citing Justice Ginsburg's dissent in *Epic System*, Virginia points out that a state may rely in part on private individuals to enforce its laws. DB25 (quoting *Epic System Corp. v. Lewis*, 584 U.S. 497 (2018)). The dissent in *Epic* was referring specifically to wage-and-hour laws, arising from economic regulation. But *Younger* arises in the criminal context, and criminal law enforcement is a core governmental function that cannot be outsourced to financially-interested private parties. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 249–50 (1980). It makes good sense then that *Younger* requires that the government enforcer initiate proceedings before any abstention is due. A private party's complaint is insufficient; it opens a state investigation under Virginia's Fair Housing Law, but it does not open a quasi-criminal enforcement proceeding. OB47–48 (citing cases).

Defendants' purported distinction of *Telco* fares no better. As they see it, *Telco* was simply a function of the fact that the state administrative process was "too informal." DB27–28. Even on that unduly narrow view of *Telco*, the VFHL's investigatory and conciliation process doesn't warrant abstention either. As in *Telco*, it does not employ "trial-like trappings." JA24; JA91–92 (describing the process; omitting the "safeguards" listed in *Telco*: "subpoenas of witnesses, cross-examination, and an impartial hearing officer." 885 F.2d at 1228).

The simple fact is that when Lucinda brought this suit, the state proceedings were at the same stage as *Telco*: investigation and conciliation. In *Telco*, the state agency notified the party by letter of the claimed violations and invited it to attend a factfinding conference after the filing of a complaint and the commencement of an investigation. 885 F.2d at 1227, 1230. Even predating *Sprint*'s limitation of *Younger*, *Telco* demonstrates that any applicable proceeding must be sufficiently advanced to justify abstention. "Where no formal enforcement action has been undertaken, any disruption of state process will be slight." *Telco*, 885 F.2d at 1229. The district court correctly found that the state proceedings were not judicial. OB48 (citing JA34); *contra* DB26–30. But it didn't follow that finding to the correct conclusion: there was no existing judicial proceeding to abstain for. *See, e.g., Midkiff*, 467 U.S. 229, 238–39.

*Midkiff* does not appear in Defendants' brief. Instead, they rely heavily on the two cases that the district court did. DB20–22 (discussing *216 E. 29th St.*); DB25 (discussing *Dayton Christian Schools*). Not only was *216 E. 29th St.* a non-precedential unpublished decision, the *Sprint* question of whether investigation of a private fair housing complaint constituted a quasi-criminal enforcement proceeding wasn't raised. OB45; *see Robert A. Johnston Co. v. Southland Dairy Distrib. Co.*, 368 F.2d 993, 995 (4th Cir. 1966) (noting that discussing issues without the benefit of briefing can lead to "precipitous" and ill-considered decisions). "Cases cannot be read as foreclosing an argument

21

that they never dealt with." *Waters v. Churchill*, 511 U.S. 661, 678 (1994). "A later court assessing a past decision must therefore appreciate the possibility that different facts and different legal arguments may dictate a different outcome." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 426 (2024) (Gorsuch, J., concurring).

In contrast, as Lucinda already explained, *Dayton Christian Schools* is entirely compatible with Lucinda's proposed rule. OB44. There, the state commission determined probable cause and then initiated enforcement proceedings by filing a complaint against the plaintiff before that plaintiff sued in federal court. *Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 624 (1986). As *Sprint* described *Dayton Christian Schools*: it involved "state-initiated administrative proceedings" "culminating in the filing of a formal complaint or charges." 571 U.S. at 79–80.

To these cases, Defendants add *ACLU v. Bozardt*. *Bozardt*, decided in the nascent years of *Younger* without the benefit of *Sprint*, *Middlesex*, *Midkiff*, or *Telco*, did not consider the *Sprint* question of whether or to what extent a state investigation of a private complaint is "akin to a criminal prosecution" in "important respects." 539 F.2d 340 (4th Cir. 1976). It is simply not the case after these decisions that "even where no court proceeding has yet begun, an ongoing investigation that is judicial in nature can satisfy the 'ongoing' requirement of this factor." DB29. Judge Wilkinson's opinion for the Court in *Telco* blazed the

trail on this principle. It has since been followed by the First, Third, Fifth, Seventh and Ninth Circuits. OB47–48.

*Younger* abstention is not justified here.

## Conclusion

The source-of-funds provision of the VFHL infringes landlords' Fourth Amendment right to be free from warrantless searches. The district court erred in denying the preliminary injunction against unconstitutional enforcement in these circumstances and in denying standing to Plaintiffs facing an imminent enforcement risk by the Commonwealth. Further, the district court improperly invoked *Younger* to close the courthouse door. *Pullman* abstention is not appropriate either.

This Court should reverse the denial of a preliminary injunction and remand with instructions to enjoin enforcement of the source-of-funds provision as it pertains to non-acceptance of Section 8 vouchers. Even if the Court does not find Plaintiffs meet the standard for a preliminary injunction, it should reverse the determinations of non-justiciability.

Dated:  August 5, 2026          Respectfully submitted,

_/s/ Adam E. Schulman_

Adam E. Schulman
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street, NW, Suite 300
Washington, DC 20006
Phone: (610) 457-0856
Email: adam.schulman@hlli.org

*Attorneys for Plaintiffs-Appellants*
*Lucinda LC and June Wheatley*

# Combined Certifications of Compliance

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief is 5,308 words long, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point CenturyExpd Bt font.

3.   The PDF file has been scanned for viruses by Microsoft Defender and is said to be virus-free by that program.

Dated:  August 5, 2026         Respectfully submitted,

/s/ *Adam E. Schulman*
Adam E. Schulman
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (610) 457-0856
Email: adam.schulman@hlli.org

## Certificate of Service

I hereby certify that on August 5, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Adam E. Schulman*
Adam E. Schulman